THE PEOPLE, FOR THE USE OF JOHN CLINTON, v. DANIEL F. RICE AND LORENZO D. VAN PELT.

[See 61 Mich. 355; 73 Id. 284.]

*Liquor traffic—Sureties on dealer's bond—Fraudulent conveyances.*

1. The *debt* to be recovered of a surety upon a liquor-dealer's bond, conditioned for the payment of any judgment recovered against his principal, is liquidated and judicially ascertained by such judgment. *Clinton v. Laning*, 73 Mich. 284.

2. Fraud will not be presumed from slight circumstances; but when the facts in any given case lead the unbiased mind to the irresistible conclusion that a fraud has been committed, and there is no innocent explanation of such facts, there is then no necessity for weighing the facts, or examining them singly, to see whether, if standing alone, any one of them is sufficient to establish the fraud.

3. Fraud must generally be ascertained from a variety of circumstances, some of them of slight significance in themselves, but altogether forming a chain of facts which carry conviction to the mind. Such is this case.

4. A decree granting the relief prayed for in a bill in aid of execution, which provides that the sheriff, in all proceedings under the execution against two lots occupied as a homestead, must proceed as in other cases of executions against property which embraces the debtor's homestead, as provided by the statute, is not open to objection.

Appeal from Genesee. (Newton, J.) Argued January 22, 1890. Decided January 31, 1890.

Bill in aid of execution. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Geer & Williams*, for complainant.

*Clarence Tinker*, for defendants.

MORSE, J.    May 31, 1888, a judgment was recovered in the circuit court for the county of Genesee in favor of the *People of the State of Michigan, for the use and benefit of John Clinton, against Benjamin H. Laning, Isaiah C. Laning, Burdick Potter, and Daniel F. Rice,* for $3,003.45 damages, with costs, upon a liquor bond upon which Potter and Rice were sureties.    The bill in this cause was filed in aid of execution on this judgment, and for the purpose of setting aside a transfer of certain lands made by the defendant Daniel F. Rice to the defendant Van Pelt as fraudulent as against complainant.    Proofs were taken in open court, and decree granted complainant as prayed in the bill.    Defendants appeal.

The proofs show that at the time the liquor bond was executed, May 9, 1884, Rice made affidavit, attached to said bond, that he was a freeholder, and resident of Genesee county, and the owner of property worth at least $6,000 over and above all indebtedness and exemptions. In 1885, John Clinton brought suit against the Lanings under the civil damage act, and April 7, 1887, recovered a judgment against them for $2,500 damages, and $280.20 costs of suit.    An execution issued on this judgment was returned unsatisfied, and thereupon suit was commenced on the bond, and judgment obtained as hereinbefore stated. An execution was issued on this judgment July 3, 1888, and on July 7, same year, the property described in the bill of complaint was levied upon.    This property consists of six village lots in one block in the village of Fenton.    A dwelling-house is situated on a portion of two lots, Nos. 11 and 12, which at the time of the levy was occupied by Rice and his family as a homestead.    It has been ever since, and is now, so occupied.    The declaration in the suit on the bond was filed June 4, 1887, and served upon all of the defendants June 8, 1887.    June 25, 1887, all the defendants appeared and pleaded by Clarence Tinker, their attorney.    July 13, 1887, Daniel F. Rice and his wife, Eliza W. Rice, conveyed these six village lots to Lorenzo D. Van Pelt, of the state of New York, a brother-in-law of Rice, for a recited consideration of $3,175.    This deed was recorded August 11, 1887. Rice acquired this property in 1883 or 1884, and has since that time lived upon it.    He was living upon it at the time he executed the bond.    Neither Rice nor Van Pelt was sworn upon the trial, but both answered under oath. Rice denies any fraud, and asserts that there was a consideration of $3,175 paid by Van Pelt.

"That the payments were made in the settlement of claims which this defendant owed said Van Pelt, consist-

ing of accounts, notes, and demands then due said Van Pelt from this defendant; and that said Van Pelt received the same long prior to the date of the judgment mentioned in complainant's bill, and that they were justly due him."

Van Pelt denies that the sale was a sham, or fraudulently made, and claims that he owns the premises in fee-simple, and paid $3,175 therefor.

" That the payments were made in the settlement of claims which said Rice owed this defendant, consisting of accounts, notes, and demands then due him from said Rice; and that this defendant had the same, and they were long past due, before the date of the judgment mentioned in complainant's bill."

It will be seen that there is an interesting similarity in the statements of these defendants as to the manner and means of payment, not only in the language of such statements, but also in the absence of detail in each, or description, of what composed this alleged debt, or the consideration of it, from Rice to Van Pelt.

It was shown on the part of complainant that, since the alleged sale to Van Pelt, Rice has occupied and used the premises the same as before, and exercised acts of ownership over them. Soon after the pretended sale, he expended about $100 in painting the house, and had the well and cistern fixed, and made other repairs upon the premises. He also paid the taxes. Mrs. Rice's testimony, instead of showing the *bona fides* of this sale, tended to confirm the claim of complainant that it was fraudulent, and made for the purpose of defrauding complainant by preventing the collection of the judgment as against defendant Rice. She testified that her husband was owing Van Pelt something over $2,000—she did not know the exact amount—when Rice left the east, about 11 years before she testified, and over 9 years before the deed was made, and that she was informed by her hus-

band that the conveyance was made to pay this debt; that Van Pelt was not in Michigan when the deed was made, and has not been in this State since. She could not tell what composed the debt, but claimed to know that it was evidenced by notes; but how many, or to what amount, or what was done with them after the deed was made, she was unable to state. She could give no explanation why her husband had not paid this debt, or any part of it, before, or why he should pay it at this particular time, and in this particular way.

In explanation of the use and occupancy of the premises by her and her husband since the transfer to Van Pelt, and the repairs made upon the same, she stated that she read a letter from Van Pelt to her husband in which it was stated that Rice was—

" To keep the place up in good repair, paint the house, and pay the taxes on it, and the rent was to be paid once in three months."

The amount of the rent to be paid she did not know, as her husband did not tell her much about his business, and the letter did not state such amount. Testimony was also given on behalf of complainant that Rice stated, the day the execution levy was made on the lots, that Van Pelt had never seen the premises, and that it was bought by correspondence, a photograph of the place being sent to him, and that it had been leased by Van Pelt to Mrs. Rice. But from Mrs. Rice's testimony it appears that she did not know that the place was leased to her.

We are satisfied that the facts and circumstances of the case point very plainly to a fraudulent disposition of this property, and that such facts and circumstances are not satisfactorily explained by the defendants. It is true, as claimed by defendants' counsel, that fraud will not be presumed from slight circumstances; but when the facts

in any given case lead the unbiased mind to the irresistible conclusion that a fraud has been committed, and there is no innocent explanation of such facts, there is then no necessity for weighing the facts, or examining them singly to see whether, if standing alone, any one of them is sufficient to establish the fraud. Fraud must generally be ascertained from a variety of circumstances, some of them of slight significance in themselves, but altogether forming a chain of facts which carry conviction to the mind. Such is this case.

It is also urged against the decree in this case that the conveyance of the land by Rice could not have been intended to hinder, delay, or defraud a creditor, because Clinton was not a creditor of Rice at that time. It is contended that Clinton was making a claim for damages which was unliquidated, and sounding in tort, and could not become a debt until it had been prosecuted to judgment. The action against the defendant Rice, however, upon which the judgment was recovered, and which judgment formed the basis of the levy on the premises, was in debt upon a bond, and the amount of the debt to be recovered in the suit upon the bond was not only liquidated, but had been before that judicially determined in the suit of Clinton against the Lanings; and it was held in this Court in *Clinton v. Laning*, 73 Mich. 284, that such judgment was binding upon Rice and Potter, the sureties on the bond, the express condition of such bond being that they would pay any judgment recovered against their principals.

The decree of the court below having provided that the sheriff, in all proceedings under the execution against lots 11 and 12, upon which the dwelling-house stands, must proceed as in other cases of executions against property which embraces the debtor's homestead, as pro-

vided by the statute, no fault can be found with it; and it is therefore affirmed, with costs.

CHAMPLIN, C. J., CAMPBELL and GRANT, JJ., concurred. LONG, J., did not sit.