WILLIAM J. GETTY v. RUTHALIA PETERS.

*Land contract—Forfeiture—Demand—Ejectment.*

1. A vendee who bids in land at a tax sale to protect her possession and title under a land contract is not estopped in an action of ejectment by the vendor from claiming under the contract.

2. A vendor who, by reason of defects in the title to the land contracted to be sold, is not in a condition to perform on his part, cannot forfeit the contract for non-payment by the vendee, and oust him from the possession given to him in the contract.

3. In such a case, before the vendee can be ousted from such possession in an action of ejectment, or by summary proceedings under the statute, the vendor must notify the vendee that he

82 661
d143 577
82 661
146 ²190
82 661
f157 ³325

has perfected the title, and is ready to perform on his part, and must demand payment of the vendee.

Error to Kalkaska.   (Aldrich, J.)   Argued October 10, 1890.   Decided October 31, 1890.

Ejectment.   Plaintiff brings error.   Affirmed, but without prejudice to other proceedings.   The facts are stated in the opinion.

*William D. Totten* (*Fitch R. Williams,* of counsel), for appellant, contended:

1. The notice to quit, to which a tenant at sufferance is entitled, cannot be claimed by one who has asserted any title that directly or impliedly negatives the right to put an end to his interest; citing *Kunzie v. Wixom,* 39 Mich. 387.

2. No recovery can be had for improvements, under How. Stat. § 7836, unless the possession has been held and improvements made by virtue of the specific title set up, and that alone, whether that be a claim or color of title, and this is especially so where the occupation has been for less than six years; and the improvements must have been made in reliance, in good faith, upon the specific adverse colorable title alone, as set up; citing *King v. Harrington,* 18 Mich. 213; *Sands v. Davis,* 40 Id. 17; and no compensation will be allowed in equity, even, for improvements put upon land by one who has entered under a contract to obtain the title, which he has subsequently repudiated.

*J. L. Boyd* (*Sweet & 'Perkins,* of counsel), for defendant, contended:

1. Ejectment is a possessory action, and, aside from the question of title in cases like this, the right of possession is an important element, and the plaintiff must not only show title, but a paramount right to possession; citing How. Stat. § 7790; *Van Vleet v. Blackwood,* 39 Mich. 728; *Bertram v. Cook,* 44 Id. 396; *Covert v. Morrison,* 49 Id. 133.

2. Under the facts found in this case, defendant was in a position to enforce specific performance of the contract; citing *Morris v. Hoyt,* 11 Mich. 19.

3. After plaintiff had perfected his title, he was obliged to give notice of that fact to defendant, and of his readiness to perform, and put him in default for non-performance before bring-

ing an action based on the termination of the contract; citing
*Bomier v. Caldwell,* 8 Mich. 463; *Shafer v. Niver,* 9 Id. 253;
*Richmond v. Robinson,* 12 Id. 193; *Converse v. Blumrich,* 14
Id. 109; *Voltz v. Grummett,* 49 Id. 453; nor was the bringing
of this action a sufficient notice and rescission of the contract;
citing *Van Vleet v. Blackwood,* 39 Id. 728.

4. The relation of landlord and tenant existed between the parties;
citing *Dwight v. Cutler,* 3 Mich. 572; *Crane v. O'Reiley,* 8 Id.
312; *Hogsett v. Ellis,* 17 Id. 352; *Rawson v. Babcock,* 40 Id.
330.

5. A void tax deed gives sufficient color of title, when coupled
with possession, to entitle the occupant to betterments; citing
*Hecock v. VanDusen,* 80 Mich. 359.

MORSE, J. This is an action of ejectment. It was
tried before the circuit judge of the Kalkaska circuit
court without a jury.

He finds that June 4, 1885, Addie B. Getty, wife of
the plaintiff, entered into a contract with George W.
Peters, husband of the defendant, to sell him lots 7 and
8 in the village of Kalkaska for $200, payable $25 down,
and the balance on or before three years from date, with
interest at 10 per cent., payable annually. Peters was to
pay all taxes assessed on said premises from said date,
and was to keep the buildings insured for the benefit of
Mrs. Getty. When the contract was fully paid and per-
formed, Mrs. Getty was to convey the premises to Peters
free and clear of all liens and incumbrances, save those
suffered by Peters to accrue after the making of the con-
tract. Peters paid the $25, and went into possession.
At the time, Mrs. Getty had a clear title to lot 8, but
not to lot 7, the legal title to which was then in one
David E. McVean, subject to a mortgage to David Ward.
A foreclosure of this mortgage was commenced in chancery
April 14, 1885, resulting in a sale and conveyance of the
same to William C. Ward, June 14, 1886. Ward quit-
claimed to the plaintiff April 25, 1888. A warranty deed
of both lots was given by Mrs. Getty to plaintiff June 23,

1886. There was a house on lot 7 at the date of the contract, into which the defendant and her husband moved, and in which the defendant has ever since lived. She has improved the house to the value of $50. The value of the lots without the improvements is $250. July 7, 1885, Peters paid Mrs. Getty $20 on the contract, and also the taxes for 1885 on January 26, 1886. In March, 1886, he died intestate, leaving his widow and one son, Albert O. Peters, him surviving. Albert O. Peters never lived on or occupied said premises. It was further agreed in this contract that if Peters failed to perform his contract, or any part thereof, Mrs. Getty should have the right to declare the same void, retain whatever had been paid upon it, and all improvements made thereon, treat Peters as her tenant, holding over, and take immediate possession of the premises, and remove him therefrom.

After the death of Mr. Peters, and in the fall of 1886, plaintiff went to defendant, and wanted to know if she was going to carry out the contract, and asked her to furnish $50 with which to buy the title of Ward to lot 7. She refused to furnish the $50. At this time there was nothing due upon the contract. In 1886 the premises were sold for the taxes of 1884,—taxes becoming a lien on the land before the contract was made. The defendant bid in the lots for these taxes, paying therefor $5.60. November 12, 1887, she received her tax deed, and put it on record December 14, 1887. She paid the taxes for 1886 on lot 8, and for 1887 on both lots, and the village taxes for 1887 and 1888. Plaintiff was supervisor in 1886, 1887, and 1888. He assessed both lots to defendant in 1886; in 1887, lot 7 to her, and lot 8 to himself; and both lots to himself in 1888, and paid the taxes for that year. Some time in 1887, and after plaintiff had heard of the procuring of the tax title by defendant, he served a notice upon her—

"To the purport and effect that she had forfeited all rights under said contract by non-performance of the conditions thereof, and demanding possession of said premises from her."

The court finds that, allowing the sum defendant paid at the tax sale upon which she received her tax deed as a payment upon the contract, there was due June 4, 1887, as interest upon the same, $7.60. Before commencing this suit, which was begun October 1, 1888, no other notice but the one already mentioned was served upon the defendant or her son. After the death of Peters, no payment of the principal or interest on the contract was ever made to Mr. or Mrs. Getty, and the buildings on the premises were never insured for their benefit.

The court further finds that the defendant was unable to effect such insurance, owing to the fact that the building was not such a risk as the insurance companies, doing business in Kalkaska, would take; that the plaintiff knew when he received his title of the full extent of defendant's rights under the contract; that he gave no notice of. his acquiring the title from Ward; that no demand was ever made upon the defendant for any amount due on the contract, and neither she nor her son ever had or sought any interviews with plaintiff in regard to the contract, and never offered to pay any sum of money on said contract, or for getting a deed of said property on any terms, since January 11, 1887. On that date defendant and her son attempted to make some arrangement about fulfilling the contract, and receiving a good title to the land. This was done at the request of his mother. He and plaintiff went to a law-office, and a warranty deed was drawn up by Willis B. Perkins with Getty and his wife as parties of the first part, and Albert O. Peters as party of second part. The consideration was put at $150.

The deed purported to convey lot 8, and the dwelling-
house on lot 7. Said Peters claimed in his testimony
that when he read said deed, and found it did not cover
both lots 7 and 8, he, on inquiry, learned then for the
first time that said Getty did not have his title completed
to said lot 7, and that Mr. Ward had title to said lot,
and refused to pay said $50 until Mr. Getty should com-
plete his title, and be able to convey both lots; that his
understanding was that he should then and there pay
his $50, get a deed of both lots, and give his mortgage
back thereon for the balance of the purchase price. Said
Getty claimed in his testimony that said Peters had before
that been fully informed by Mr. Getty about the title to
said lot 7 being still in Mr. Ward, and that the $50 was
to be paid then so said title could be procured from said
Ward. Said Getty further claimed in his said testimony
that two ways had been talked about of getting said
title,—one was for Peters to take a deed of lot 8 and the
house on lot 7, and then procure title to himself of said
lot 7 from Ward, and then give Getty a mortgage back
on both lots for the balance; and the other way was for
him to pay or advance $50, and Getty would get the title
from Ward, and then complete title in Peters, and take
the mortgage back as aforesaid. Said deed so drawn by
Mr. Perkins was not executed and acknowledged by said
Getty, and, pending said negotiations, said Peters left
said office, and nothing more was ever done in regard to
consummating any such arrangement.

The circuit judge also found that—

" The defendant has been ready at all times to perform
said contract on her part, as the widow of said George
W. Peters."

Judgment was rendered on these findings for the
defendant. Error is assigned upon some of these findings,
that they are not supported by the evidence. All the tes-

timony is returned in the record, and we find, in this regard, that there was evidence tending to sustain all the findings of the court. The weight of it, and to whom credence should be given in the case of conflicting testimony, was a matter to be settled by the circuit judge. We have no power in such case to disturb his findings.

The defendant pleaded not guilty to the declaration in ejectment, and also served a notice that she would claim on the trial as follows:

"Compensation for buildings erected by her, and that her expense and other improvements made on the said lands described in the plaintiff's declaration, which said improvements were made by said defendant since her possession and occupancy of said premises, and said defendant will also show that she has been in the quiet, peaceable, and notorious possession of said premises since the 4th day of June, 1885, by virtue of a tax deed and land contract, in good faith, and will request the jury to find whether the said premises have been actually and peaceably occupied by the said defendant, and the time of such occupation, and to determine the increased value of the premises by reason thereof."

It is claimed by plaintiff's counsel that the defendant relied on the tax title; that the same was shown to be void; and that after setting up an adverse claim of the tax deed she was estopped from claiming under the land contract. This claim is not tenable from the findings of the court or the evidence in the case; nor did she rely on the tax title upon the trial. It appears that she bid in the property at the tax sale to protect her possession and title under the land contract.

The other main contention is that the defendant had never offered to perform the contract or make any payments thereon after her husband's death, and that her rights under the contract had been duly terminated by notice. But the circuit judge finds that she was always ready to perform the contract, but that no demand was

ever made upon her to do so. It is true, the plaintiff served a notice upon her some time in 1887, declaring that she had forfeited her contract, but at that time neither he nor his wife had any title to lot 7, upon which defendant was living. After that negotiations were made looking towards a settlement of the controversy and a fulfillment of the contract on both sides; but plaintiff could give no deed of lot 7, and did not propose to do so, and the bargain fell through. Plaintiff acquired the title to lot 7 in April, 1888. In October he commenced suit, without notifying the defendant that he had the title, and could fulfill on his part, and without any demand upon her for payment of the amount due upon the contract. It is plain that when she found that he had the title, and before notice of forfeiture, she could have tendered him the amount due, and, upon a refusal by him to deed, could have forced him in equity to a specific performance. The bringing of this suit was not a sufficient notice of forfeiture; nor was the old notice of any avail to him, as at the time he gave it he was not in a condition to perform, as he had before notified her, and there was but a small sum due as interest. His subsequent negotiations showed that he did not rely upon this notice. Having no title to lot 7 at the time he gave it, he could not forfeit the contract for non-payment, and oust the defendant of possession, when he himself was not in a condition to perform on his own part. *Converse v. Blumrich*, 14 Mich. 109. The contract of purchase by its terms gave the defendant the immediate right of possession, and to keep the same unless the contract was not fulfilled on her part. If she failed, then the vendor had the—

" Right to declare the same void, and retain whatever may have been paid on such contract, and all improvements that may have been made on said premises, and

may consider and treat the party of the second part as her tenant, holding over without permission, and may take immediate possession of the premises, and remove the party of the second part therefrom."

Before the defendant could be ousted from her legal possession under this contract in an action of ejectment, or in summary proceedings, it was necessary for plaintiff to notify the defendant, under the circumstances of this case, that he had full title to the premises, and could perform on his part, and demand payment upon her part.

The judgment is affirmed, but without prejudice to any further proceedings to recover the land after forfeiture as above indicated.

The other Justices concurred.