JUDSON M. PEASLEE v. ISAAC COLLIER AND ANNA A. COLLIER.

*Fraudulent conveyances—Husband and wife—Deed of homestead—Consideration—Release of dower.*

This case involves the alleged fraudulent conveyance of a mort-gaged homestead, and other land, by a husband to his wife, in consideration of the release of her dower in other real estate owned by him, and which he desired to dispose of, and of $200 claimed to be due her for improvements made upon the home-stead; and it is held by a majority of the Court that the proofs fail to establish the fraud charged.

Appeal from Kent. (Grove, J.) Argued November 21, 1890. Decided December 5, 1890.

Bill in aid of execution. Complainant appeals. Affirmed. The facts are stated in the opinion.

*Sweet & Perkins,* for complainant.

*Fletcher & Wanty,* for defendants.

CAHILL, J. This is a bill filed in aid of execution.

Complainant recovered two judgments against defendant Isaac Collier, which, with the taxed costs, amount to $515.01. Executions issued upon these judgments, and were levied upon lot 14 of Colton's subdivision of block number eight of Holbrook's addition to the city of Grand Rapids. The premises are claimed by the defendants as their homestead, and are subject to a mortgage of $1,250, but complainant alleges in his bill that the premises are worth more than $3,000. On April 8, 1889, defendant Isaac Collier conveyed the premises in question to his wife, Anna A. Collier, and complainant seeks to have this deed set aside as fraudulent.

Defendants answered admitting that the premises were a homestead; state that they were mortgaged for $1,250 and interest; claim that they were not worth more than the homestead exemption and mortgage; deny all fraud; and allege a full consideration for the deed from Isaac to Anna A. Collier.

The facts gleaned from the record show that the judgments recovered by complainant against defendant Isaac Collier were for groceries furnished to his family. Defendant Isaac Collier had spent most of his time for a year and more in Battle Creek, where he was engaged in the insurance business, but his family occupied the homestead in Grand Rapids. He was possessed of some real estate in Battle Creek, which, during the fall of 1888, he had contracted to exchange for some patent door-bell stock, but his wife was unwilling to sign the deed unless he would deed her the homestead in Grand Rapids. This, it appears, he was willing to do, but no steps were taken to carry out this arrangement until after complainant commenced his suits in justice's court. Complainant recovered judgments before the justice on Monday, April 8, 1889. On Saturday, April 6, defendant Isaac Collier executed to his wife the deed of the homestead, including also certain lands in Iosco county. At the same time, Anna A. Collier, the wife, joined with her husband in deeds of the Battle Creek property, whereby she released her right of dower. These deeds, although drawn up on Saturday, were not executed and delivered until Monday morning, April 8. It is this deed of the homestead so made by Isaac to Anna A. Collier that complainant seeks to have set aside in this suit. He claims that it was made without consideration, and for the purpose of preventing him from collecting his judgments. On the other hand, the defendants claim that such deed was executed in pursuance of the agreement made between

the parties to it some months prior thereto; that the release by Mrs. Collier of her right of dower in the Battle Creek property was a valid and adequate consideration for the interest which she secured by the conveyance from her husband to herself, so far as the homestead is concerned.

The burden of proof is upon the complainant to establish the fraudulent character of this deed. The only evidence in the record tending to show such fraud is the fact that such deed was made during the pendency of complainant's suits, and when he was about to procure judgments, and the testimony of Mr. Palmer, the conveyancer who drafted the papers between the Colliers. Being called as a witness for defendants, on cross-examination, he testified as follows:

" *Q.* During the time that you were receiving instructions for and drawing these papers, and while the negotiations were being carried on and completed, was anything said by any of you in regard to Mr. Peaslee's claim?

" *A.* There was.

" *Q.* Who said it, and what was it?

" *A.* Mr. Collier asked me if there would be anything wrong in his deeding the property to Mrs. Collier under the circumstances; that is, while Mr. Peaslee's suit was pending. I told him that he had a perfect right to deed his homestead to Mrs. Collier, and that he had a right to deed any property that he chose to her, for a *bona fide* consideration. That is all I distinctly remember in regard to the conversation; that is the effect of what was said.

" *Q.* It is a fact, is it not, Mr. Palmer, that one of the objects of making that conveyance that Saturday night, and recording it early Monday morning, was the expectation or the fear that if that was not done it would be levied on by Mr. Peaslee?

" *A.* I *think* that Mr. Collier was afraid that the property might be levied upon and sold at a forced sale, and that he did not want to have it sacrificed, and was not in a position to pay the debt in cash; but it was under-

stood at this time that I should offer Mr. Peaslee security. That is the security that I have referred to.

" Q. Was not Mrs. Collier afraid of the same thing that you have mentioned in speaking of her husband?

"A. So far as that is concerned, Mrs. Collier told me that she did not know how they were going to meet their obligations, but I told her, as I remember, that I didn't think there was any danger of her losing her home. That is all.

" Q. It is a fact, is it not, that at that time Mrs. Collier, as well as her husband, feared that, unless this conveyance was made, the place would be levied upon by Mr. Peaslee, whether or not there might be ultimate danger of losing it?

"A. So far as I know as to what she thought, she didn't expect the place would be sold. Mrs. Collier sent for me, and seemed to be troubled about the suit. She seemed to understand that the homestead was exempt to the amount of $1,500, but didn't know whether the mortgage would protect the balance of the value of the property, and I told her that I didn't think there was any danger from Mr. Peaslee's claim, and she seemed to be satisfied so far as that was concerned, but wanted me to go ahead and get the conveyance from Mr. Collier, because Mr. Collier had lost nearly all of his property, some $10,000 or $12,000, which he brought to Michigan some few years ago, and she wanted to save as much as she could for herself and child."

Much of this testimony was objectionable as giving the deductions of the witness. What he thought Mr. Collier was afraid of was not important. On the other hand, Mr. Palmer testified that, at the time these papers were executed between the Colliers, it was understood that the land in Iosco county was worth about $500, and that Mrs. Collier was to secure the complainant's claim on that land if he would accept such security; that pursuant to such understanding, and being instructed so to do by both Mr. and Mrs. Collier, he called on complainant, and offered him a mortgage on the Iosco county property to secure his claim; that complainant said he would look up the title and consider it, and would let

him know, but for some reason did not do so, but filed this bill.

The witness Palmer also testified that, at the time the papers were executed between the Colliers, the question of consideration for the deed from Mr. Collier to his wife was discussed; that he made some computations as to the value of Mrs. Collier's dower interest in the Battle Creek property; that the value of such property was estimated at $3,500, and Mrs. Collier's dower at one-third of that amount, $1,167. The evidence shows that Mrs. Collier had made certain improvements upon the homestead out of her own money, amounting to $200. The homestead was valued at $2,500, from which was deducted the mortgage, which was called $1,200. This left in the homestead net $1,300, in which Mrs. Collier claimed she had a dower interest amounting to one-third, or $433, deducting which, her husband's interest in the homestead was called $867. To this was added the land in Iosco county, estimated at $500. These two items added together made $1,367, which was the same amount as Mrs. Collier's dower interest in the Battle Creek property, plus the $200 in improvements put by her on the homestead. These figures are somewhat far-fetched, but they serve to show that there was some financial basis for Mrs. Collier's claim that she had given a consideration for the conveyance of the homestead by her husband to her. The desire of Mr. Collier to exchange his Battle Creek property for the patent door-bell stock, however unprofitable it may have turned out to be as a business venture, was yet lawful, and it it had turned out well, and had made him rich, would have been highly commended. He could not make this exchange unless his wife would consent to sign the deed. She refused to sign except on condition that he should deed her the homestead. The homestead would be just as valuable to

him as a home with the title in his wife as in himself. These considerations were ample to explain the conveyance to his wife without resorting to fraud as the inspiring motive.

That the release of dower in the Battle Creek property was a good consideration for the deed from Mr. Collier to his wife as between themselves is not questioned, but it is claimed that it is an inadequate consideration, and does not serve to relieve the transaction from the taint of fraud which complainant sees in it. In determining as to whether the consideration was adequate, we must take into account the additional fact that Mrs. Collier already had under the law a substantial interest in the homestead; an interest which secured to her the use of it so long as she lived free from any power of her husband or claim of his creditors. Her interest amounted practically to an estate for the life of her husband in the whole, and an estate for her own life in one-third if she survived him. What that interest was worth in dollars and cents it is difficult to estimate. Mrs. Collier had a right to estimate it according to her own judgment, and I am not prepared to say that any miscalculation as to the value of her dower interest in the Battle Creek property, or her interest in the homestead, is any evidence of a fraudulent purpose or intent on her part.

The evidence shows that Mr. Collier offered to turn out to complainant the door-bell stock that he had received in exchange for the Battle Creek real estate, but that complainant refused to accept it on the ground that it was of little or no value. It would seem, therefore, that the Colliers have offered complainant all the property they appear to have of any kind, except the homestead, which now stands in the name of Mrs. Collier. I see in this nothing to indicate any intention to defraud, but rather a desire to pay complainant his debt. The rule

that fraud is not to be presumed but must be proved applies, and it seems to me the complainant has failed to make by his proofs such a case as entitles him to the decree prayed for.

The decree below is affirmed, with costs of both courts.

LONG and GRANT, JJ., concurred with CAHILL, J.

MORSE, J. In this case I am satisfied from the conduct of defendants, and the testimony of Mr. Palmer, the conveyancer, that the deed from the husband to the wife of the homestead was executed in fraud of the complainant's rights, and for the express and only purpose of putting it beyond the reach of the levy that was anticipated might be made as soon as the complainant obtained his judgment in justice's court. The decree ought to be for complainant.

CHAMPLIN, C. J., concurred with MORSE, J.