RAYMOND *v*. McKENNA.

1. COUNTIES—SUPERVISORS—CONTRACTS—COMMITTEES—AUTHORIZING ACTS.

Whether a board of supervisors can properly delegate to a committee authority to receive bids and award contracts, a ratification of the acts of a committee to which it has attempted to deligate such authority, and which has proceeded as instructed, makes the acts of the committee the acts of the board and validates the contract which they have made.

2. FRAUD—PRESUMPTION—BURDEN OF PROOF.

Fraud is not lightly to be presumed and those alleging it must prove it.

3. COUNTIES—CONTRACTS—HIGHEST BIDDER—FRAUD.

A contract for furnishing a court-house is not presumptively

fraudulent because let to the highest bidder, it being claimed that the bidder was a manufacturer of established reputation of high-class goods, and the proposal being for goods made to order as against stock goods specified in other proposals.

Appeal from Chippewa; Steere, J.   Submitted October 16, 1906.   (Docket No. 82.)   Decided January 4, 1907.

Bill by Frederick B. Raymond, Melville E. Sayles, and Minerva Sayles, copartners as the Raymond & Sayles Furniture Company, and others, against James McKenna and others to enjoin the performance of a contract on the ground of fraud.   From a decree for complainants, defendants appeal.   Reversed, and bill dismissed.

*Sharpe & Handy*, for complainants.

*George B. Holden* (*L. C. Holden*, of counsel), for defendants.

MOORE, J.   During the summer and fall of 1904, an addition was erected to the court-house of Chippewa county. The board of supervisors appointed, at the January, 1905, session, a committee " to interview the several furniture dealers and salesmen, and to determine what furniture will be required and the expense thereof, and to report at tomorrow's session, with their recommendation."  After a session of a few hours, the committee reported to the board that they had received bids from three parties, as follows :

|  | Schedule A. | Schedule B. |
|---|---|---|
| "A. H. Andrews Co., Chicago, Ill. | $3,095.40 | $2,335.50 |
| John McKee, Sault Ste. Marie, Mich. | 2,335.75 | 1,914.85 |
| Raymond & Sayles, Sault Ste. Marie, Mich. | 2,061.55 | 1,679.00 |

" We have no recommendation to make except that Schedule A of the A. H. Andrews Co. is made to order in a large part.   Schedule B of the A. H. Andrews Co. we compare with Schedule A of John McKee and Raymond & Sayles, which are to be first-class quarter sawed oak, stock goods.   John McKee's Schedule B has many

articles which compare equally with some articles in Raymond & Sayles' Schedule A.''

This was near the end of the session, and the board referred the report back to the committee with power to purchase such furniture as, in their judgment, they deemed necessary, in an amount not to exceed $3,000. The committee went into session after the board adjourned, and decided to award the contract to the A. H. Andrews Co. at their highest bid, agreeing to pay $2,815 for the furniture first listed, less the opera chairs for the court-room. The following morning, before the contract was signed, Raymond & Sayles secured a further hearing before the committee. There is a dispute as to what then occurred. A conference was had between John McKee and the representatives of A. H. Andrews Company. McKee then proposed taking the contract in his name, but for the A. H. Andrews Co. and for their furniture, and at their figures, $2,815, and a contract was then signed by the committee and McKee. This action was brought for the purpose of enjoining the carrying out of this contract, the complainants claiming it was fraudulently brought about. The circuit judge granted a temporary injunction and on the final hearing issued a permanent injunction. The case is brought here by appeal.

The defendants put in a sworn answer in which they denied all the allegations of fraud and averred:

''That the members of said committee, after spending much time and giving much consideration to the matter of the purchase of said furniture, and after duly and fairly considering the price and furniture offered by each of said bidders and according to each of them two or more hearings with respect to their offers, and having referred the matter back to the board of supervisors for action thereon by the whole board, and after having been instructed by said board to purchase such furniture, and after further consideration and examination of the bids, said committee came to the conclusion that the bid submitted by said A. H. Andrews & Co., while higher than the other bids, provided for a much better grade of furniture; better de-

signed and finished and better adapted to the purposes for which it was intended, and that, in the opinion of said committee, such furniture was by reason thereof better and cheaper than that offered by the other bidders, at the prices stipulated.	*	*	*

"That each of the members of the said committee and said John McKee, in the contract for the purchase of said furniture, acted in entire good faith without falsity or fraud, and that each of the members of said committee acted for the best interests of the county of Chippewa, according to the dictates of his judgment. That there was no fraud whatever in any of their transactions in this regard, and that it was, in their judgment, economy and good business sense to purchase the articles of furniture so purchased by them at the price stipulated to be paid therefor. That furniture of a like quality, usefulness, suitability, and adaptability cannot be purchased for a less price than that contracted to be paid for the furniture so purchased by said committee."

The circuit judge filed a written opinion in which he said, among other thing:

"Courts cannot interfere with such contracts, however unwise they may be, or however exorbitant the price paid, if there was no misrepresentation or fraud; but in this case we are convinced that the committee was misled and predjudiced in favor of the Andrews goods by the claim that they were special, and made to order to fill this bill.

"It is claimed, and undoubtedly true, that if the articles were equally good and as good as represented it would make no difference in their intrinsic value whether they were made to order or stock goods; but a general sentiment prevails that special designs and specially made to order articles are better and .more to be desired even at higher prices, and we are convinced that such a feelng largely influenced the committee in awarding the contract to the highest bidder.	*	*	*

"The subsequent action of the board of supervisors relative to the doings of said committee has no bearing on the question before us. Our duty is to deal with the matter as it stood when this bill was filed. The board of supervisors heard no testimony, and made no investigation. Learning that a claim of fraud had been made against certain of their members, and believing them to be honest, they proposed to stand by them. So far as

that proceeding is concerned we have no criticism to offer, and it is not the opinion of this court that said committee acted dishonestly or corruptly with any view to personal gain. They did act unwisely and hastily, and were misled and deceived and entered into this contract under an honest belief that certain false representations made to them were true. Those misrepresentations taint the contract with constructive fraud rendering it illegal and void in the opinion of the court."

After the bill of complaint was filed and the temporary injunction was issued, the committee reported the situation in writing to the board of supervisors then in session, part of the report being as follows:

"That after careful consideration of all bids submitted, we concluded to use the A. H. Andrews furniture, and entered into a contract with John McKee of Sault Ste. Marie, Michigan, for the same as per schedule attached and filed in the county clerk's office for the sum of $2,815. Your committee further reports that subsequent to entering into said contract, to wit, on the 4th day of March, 1905, your committee, your chairman, your clerk, and John McKee were restrained temporarily, by an order of the circuit court of this county which is now pending, from in any way carrying on said contract, or purchasing any furniture for the court-house, upon the complaint of F. B. Raymond and others, which complaint alleges lack of authority on the part of your committee to purchase said furniture and enter into said contract, and also that the proceedings of your board relative thereto were defective, because of the absence of the necessary appropriation to pay for the same. The said complaint also charges fraud in the letting of said contract, and alleges that the price paid for the furniture is considerably in excess of the offers made by other bidders for practically the same class and style of furniture.

"Your committee further says that while the price is in excess of the other offers it was and still is the opinion of your committee that the furniture offered by the other bidders was inferior in style, quality, and adaptability to that selected by your committee, and that the superiority of the furniture selected is great enough to warrant the extra price to be paid therefor.

"Your committee requests, in view of the charges of fraud made against the members thereof, that if, in the

opinion of your honorable body, there is any foundation for such charges that a full and complete investigation be had by your honorable body, and your committee earnestly courts said investigation."

Instead of appointing an investigating committee the board of supervisors by a vote of 13 to 1, all the five members of the committee refraining from voting, adopted the following resolution:

"*Resolved*, That the sum of $2,815.00 be and the same hereby is appropriated and set aside from the amount heretofore appropriated by this board 'for purposes not otherwise provided for.' Said sum to be used to pay for the furniture for use in the several offices in the court-house as per contract therefor heretofore on the 17th day of January, 1905, entered into by James McKenna, John B. McDermid, Patrick McEvoy, and A. G. Hull as a special committee of the board of supervisors on behalf of the county of Chippewa and John McKee.

"*Be it further resolved*, That said contract and all its provisions be and the same hereby are ratified and confirmed, and that the furniture therein listed and mentioned be purchased as therein provided, for the uses and purposes of said county of Chippewa as in said contract contemplated, and that the clerk and chairman of this board be, and they hereby are, authorized and instructed to draw an order in favor of said John McKee in payment therefor upon the acceptance of said furniture as in said contract provided."

We think the learned judge was wrong in ignoring this action of the board of supervisors. Had this action been taken before the contract was signed, it can hardly be questioned that the act of the committee became the act of the board of supervisors. We think the same result followed from what was done by the board of supervisors when the action of the committee was reported to it. *Naegely* v. *City of Saginaw*, 101 Mich. 532. The purchase of furniture for the remodeled court-house was peculiarly within the functions of the board of supervisors. It is usual in the transaction of any such business to appoint a committee for the purpose of learning what can

be done, and to act upon the report of the committee. While it may be doubtful if the board of supervisors could properly delegate to a committee the duty of buying such a quantity of furniture, we have no doubt that it can ratify the act of its committee. Fraud is not lightly to be presumed. It is the duty of those alleging it to prove it. *Peaslee* v. *Collier*, 83 Mich. 549; *Clinton* v. *Rice*, 79 Mich. 354; *Gumberg* v. *Treusch*, 103 Mich. 543; *Zucker* v. *Karpeles*, 88 Mich. 413; *Bly* v. *Brady*, 113 Mich. 176.

It is a matter of common knowledge that there is a great difference in the quality and value of furniture which looks much alike. Some firms have the reputation of making and dealing only in high-class goods. The fact that articles are furnished by such a firm may be and often is an assurance that the purchaser will get articles of a good quality. Though the price is higher, many persons believe it is good economy to purchase from a dealer having an established reputation as a maker of and dealer in high-class goods. A careful examination of this record does not satisfy us that such fraud is shown as justifies the interference of the court.

The decree is reversed, and the bill dismissed, with costs of both courts.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.