NELSON *v.* SMITH.

VENDOR AND PURCHASER—SUMMARY PROCEEDINGS—FORFEITURE
—WAIVER OR ESTOPPEL.

> Evidence that the vendor in a contract for the sale of land
> attempted to assist the purchaser, whose payments were over-
> due, in finding a loan, and that the purchaser, after being in
> default three months, wrote letters advising the vendor that
> he had found a person who would loan him sufficient money
> to pay the amount due, and that the vendor had said he could
> fix matters up so neither party would lose much, is not suffi-
> cient to establish a waiver or estoppel to enforce a forfeiture
> for the default.

Error to Lenawee; O'Mealey, J. Submitted April 11,
1910. (Docket No. 55.) Decided May 7, 1910.

Summary proceedings by George H. Nelson and another
against Daniel D. Smith for the possession of certain real
estate. A judgment for complainants on a verdict directed
by the court is reviewed by defendant on writ of error.
Affirmed.

*Herbert R. Clark,* for appellant.

*Smith, Baldwin & Alexander,* for appellees.

HOOKER, J.   March 17, 1908, complainants sold defend-
ant a farm upon contract for a consideration of $4,610,
subject to a mortgage of $2,060.   One thousand was paid
in cash at the time the contract was executed, and the re-
maining $3,610 was to be paid on December 1, 1908.   The
contract, which was in writing, contained the following
provision:

" It is also agreed by and between the parties hereto
that if default shall be made by said party of the second
part in any of the payments of principal or interest at the
time, or any of the times hereinbefore specified, or in case

the said party of the second part shall fail to keep and perform this contract in any other respect, wherein the same is required by and on his part to be kept and performed, in any such case the said party of the first part shall have the right immediately after such failure to declare this contract void and at an end, and to retain all payments which shall then have been made hereon, together with all improvements that may have been made on said premises, and said parties of the first part may consider and treat said party of the second part as their tenant holding over without permission, and may take immediate possession of said premises and remove said party of the second part therefrom."

Defendant took possession under contract on April 1, 1908, and made improvements said to amount to about $300. In September, 1908, he paid $51.50 interest upon the mortgage, which he had assumed.

At the time of his purchase the defendant had arrangement with one Miller to furnish the money necessary to make the payment to become due December 1, 1908. Before that time, Miller died. Defendant paid interest $127.35 on December 23, 1908. Nothing more was paid on the contract except the taxes for 1908, which he paid during the winter of 1909. A notice of forfeiture and to quit for nonperformance, dated February 23, 1909, was served on the defendant on March 2d, and summary proceedings were begun March 11th. The case was tried before a circuit court commissioner, and judgment for complainant was rendered March 30, 1909, and a judgment for complainant was afterwards rendered in the circuit upon trial by jury on May 19, 1909; the verdict being directed. Defendant has appealed.

The questions raised on the record are two:

(1) Whether the court should have directed a verdict on the ground that a notice of three months had not been given.
(2) Whether the complainants waived their right to declare a forfeiture.

There is testimony that Miller died in September, and

that defendant made no effort to obtain the money else-
where until December 3d, when in a talk with complain-
ant, in which he told complainant that Miller was dead,
and that he was unable at that time to get anything from
his (Miller's) estate, and that he did not know what to do,
but would look around, Nelson replied that he knew a
man named Bennett near Hillsdale, and he would see
him. On December 5th defendant wrote to complainant,
stating that the interest, $127.36, was due December 1st,
and that he had the money to pay it, and that, if com-
plainant did not find any one to take up the contract by
December 12th, he (defendant) would see complainant on
that day. Defendant testified that complainant wrote
him about December 10th or 12th that he thought Ben-
nett would take up the contract about the middle of
March or last of February. He testified, further, that on
December 23d complainant came to defendant's home,
and said he needed money, and wanted to know if the
witness would pay him the interest money, and said that,
when he paid it, he would fix this so neither one of them
would lose much. Thereupon the interest was paid. On
cross-examination he stated:

"He was not under any agreement to get the money
from Bennett or any one else. He volunteered to help me
out. He said Bennett was a man who loaned money on
real estate."

And defendant asked that he see him, offering to pay
the expense, and that he was not relying on any promise
made by complainant, only that he would go and see
Bennett about taking up the contract. He testified,
further, that complainant afterwards wrote him that he
or his son had seen Bennett, and he thought he would
take up the contract about the last of February. This
was from December 5th to 11th, that some time in Febru-
ary complainant wrote him that Bennett would not do so,
and afterwards defendant wrote two letters, as follows:

" 'Adrian, Mich, Feb. 22, 1909.

" ' George Nelson,
    " 'Weston, Mich.

" '*Dear Sir:* I thought I would write you, and have got a couple of men that think they can help me about the 15th of March or as soon as the snow goes off.

        " ' Yours Truly,
            " ' D. D. Smith.'

" When he wrote me that letter, I still expected he was going to make a payment.

        " 'Adrian, March 1, 1909.

" ' George H. Nelson,
    " ' Weston.

" '*Dear Sir:* I thought I would write you and would say I will have a man that will take up the contract if everything is satisfactory to him. He will be here the 8th or 9th of March.

        " ' Yours Truly,
            " ' D. D. Smith.' "

Defendant's wife testified that she heard the talk on December 23d, when the interest was paid; that her husband said to complainant:

" ' Now, if I pay you this and that man don't take it up, what will be the consequence ? ' or something like that, and he said, ' In that case, I will fix it so neither one of us will lose anything,' is the way he said it, or ' won't lose much,' so anyway we thought we was all right then, that he would either pay back some of the money or else draw new papers. We talked it over after he went. During the time we were expecting that Mr. Bennett would take up the contract and if we had known that he wasn't going to do so, and that Mr. Nelson was going to declare the contract forfeited, I don't know what we would have done. The 1st of December, if he had told us, then that would be business, and that would be the date to forfeit the contract, but he led us to believe to the 23d of December that that was all right. It was just two days before Christmas that he told us, and we believed then afterwards that he had that man, but still Mr. Smith kind of depended. He thought, even if Nelson did have that man, that if he could get the administrator of the Miller's estate, if he could fix the estate so he could be calculated to carry out Mr. Miller's wishes, so he thought even if Mr. Nelson had that man, if the estate was so he could, that Mr. Look would take it up for Millers.

"*Q.* State whether or not it was too late for you to find another place after you found out you couldn't make arrangements with the estate or with Bennett—couldn't take up the contract?

"*A.*. Certainly it was.   It was about the 14th of February that he phoned.   It was on Sunday.   He wanted Dan to come down the next day, but I think he couldn't come until Tuesday, and he told him that day he would have to commence hostilities if he wouldn't get out.   That was the first we knew we had to go, was about the 14th of February."

Upon this testimony defendant's counsel claim that the jury should have been permitted to find that complainant had waived his right to declare the contract forfeited for nonpayment, and that he was estopped to do so by his alleged promise to fix the matter up so that neither party should lose much.

We are unable to find a scintilla of evidence of any intention on the part of the complainant to waive his right to resort to any remedy which the contract gave him, or that should have been so understood by the defendant. Neither was there anything which would justify the application of the doctrine of estoppel.   We have not overlooked the cases cited by counsel for the appellant, viz., *Miner* v. *Dickey,* 140 Mich. 521 (103 N. W. 855), *Murphy* v. *McIntyre,* 152 Mich. 591 (116 N. W. 197), and *Maday* v. *Roth,* 160 Mich. 289 (125 N. W. 13), and find nothing at variance with legal conclusions of the trial judge.

The judgment is affirmed.

OSTRANDER, MOORE, McALVAY, and BROOKE, JJ., concurred.