DONNELLY *v.* LYONS.

1. FRAUD—EQUITY—VENDOR AND PURCHASER.

In a suit to cancel land contracts for fraud of the vendee, and to quiet title because of his default and forfeiture, fraud is not lightly to be presumed, and evidence that complainant believed, or was misled into thinking that the contracts were mere options, is found to be insufficient to sustain the burden of proof.

2. VENDOR AND PURCHASER—DEFAULT IN LAND CONTRACT.

Mere default in payments will not of itself terminate a land contract: the vendor must notify the purchaser or his assignee of his election to declare the contract void because of the breach.

3. SAME—LAND CONTRACTS—FORFEITURE—NOTICE.

Having notified defendant of her election to terminate the contracts for default, complainant was entitled to maintain a suit to quiet her title to the premises, although she had subsequently contracted to convey them to other purchasers, and defendant, after being notified of the forfeiture, tendered her a certain check for the purchase price, which she refused to receive.

4. SAME—POSSESSION—POSTING SIGNS—QUIETING TITLE.

By posting signs upon the premises, advertising them for sale, defendant did not obtain such a possession of vacant lots as to oust equity of jurisdiction over complainant's bill to quiet title.

Appeal from Oakland; Smith, J. Submitted November 12, 1912. (Docket No. 53.) Decided January 3, 1913.

Bill by Agnes Donnelly against Samuel J. Lyons and others, to quiet title to real property. From a decree for complainant, defendants appeal. Affirmed.

*E. A. Fink,* for complainant.

*Friedman, Smilansky & Blumrosen,* for defendants.

KUHN, J.  The complainant was the owner of 26 lots in the village of Royal Oak, in the county of Oakland. On or about January 10, 1910, she entered into four contracts for the sale of the lots with the defendant Samuel J. Lyons.  The agreed price was $40 per lot, $1,040, and she received the sum of $2 down, which is the only payment she has ever received.  The terms of payment were $5 or more every three months, so that the first payment was due April 10, 1910.  There were certain clauses in the land contracts against the assignment thereof without the consent of the vendor, which complainant struck out, at the request of the defendant Lyons, because he claimed he could handle and sell the lots better.  The contracts were drawn on the customary printed blanks, and complainant filled in the forms at the dictation of Lyons.  On March 22, 1910, Lyons assigned the contracts to the defendant Merton L. Rice, and on August 16, 1910, Lyons gave Rice a quitclaim deed of the lots in controversy, which was recorded in the register of deeds' office on August 20, 1910. The contracts were recorded on August 22, 1910. Immediately after his purchase of the lots, Rice put up three signs thereon on which were the words, " For sale or exchange, Merton L. Rice, 805 Majestic Building, Detroit," and claims that he called at complainant's house several times with the money for the purpose of making the payments called for by the contracts and did not find her at home.  When the time of the first payment arrived, the complainant did not hear from Lyons or from any one. Being under the impression and belief that nothing more was necessary to terminate her prior contracts with Lyons, on and before July 6, 1910, she sold the lots to other parties on contract and subsequently executed deeds under the contracts for some of the lots.  On bringing down the abstracts of title, she claims that she first learned of the recording of the Lyons contracts with assignments and quitclaim deed to defendant Rice.  In November, 1910, complainant, on learning of the claims of Rice, prepared and served on Lyons and Rice a notice to terminate

the contract.  On November 25, 1910, four days after service of this notice, the defendant Rice tendered a certified check to the complainant and her attorney for the amount he claimed to be due under the contracts, which tender was refused.  Complainant thereupon filed her bill of complaint to quiet title against the four land contracts and the quitclaim deed and asks for relief on two grounds:

(1) Because, from her understanding of the transaction, she had given only an option for the sale of the lots, and, through the misrepresentation, fraud, and deception of defendant Lyons, was led to believe and to be assured that she had given only an option, which expired by its own limitations and terms, when, in fact, she had given a land contract, which it was necessary for her to terminate by affirmative action on her part.

(2) Because upon default in the performance of the contracts she had, through a proper notice, terminated the contracts and was entitled to have the title quieted as against the record of them.

The defendants Samuel J. Lyons and Bessie C. Lyons filed a disclaimer, and the defendant Rice answered and also filed a cross-bill, asking for the specific performance of the contracts made by the complainant with defendant Lyons and assigned to him.  The trial court gave the complainant the relief prayed for, and defendants have appealed from the decree entered.

Counsel for complainant says that, although the first ground for relief was not urged strongly in the court below, it is not without force.  A careful examination of the record does not disclose sufficient proof of any fraud or deception practiced by Lyons in the execution of the contracts in controversy.  Complainant was a woman of some business experience.  She had had the same form of contracts in her house and had executed the same kind of instrument to other people before and after the transaction with Lyons.  Under the testimony offered, she would not be entitled to relief by reason of the first ground above set forth.  Fraud is not lightly to be

presumed, and it is the duty of those alleging it to prove it. *Peaslee* v. *Collier*, 83 Mich. 549 (47 N. W. 353); *Clinton* v. *Rice*, 79 Mich. 354 (44 N. W. 790); *Gumberg* v. *Treusch*, 103 Mich. 543 (61 N. W. 872); *Zucker* v. *Karpeles*, 88 Mich. 413 (50 N. W. 373); *Bly* v. *Brady*, 113 Mich. 176 (71 N. W. 521); *Raymond* v. *McKenna*, 147 Mich. 35 (110 N. W. 121).

The first question that confronts us in considering the second ground for relief is: Was the complainant in a position to declare a forfeiture of the contract at the time it was done?

The contracts in question contained a clause or provision as follows:

"And if said party of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall, immediately after such failure, have a right to declare the same void, and retain whatever may have been paid hereon, and all improvements that may have been made on said premises, and may consider and treat the said party of the second part as a tenant holding over without permission, and may take immediate possession of the premises and remove the party of the second part therefrom."

It has been held, and it is the rule in this State, that mere default in payments will not of itself annul or make void the contract under such provisions, but that the vendor must give a notice that he has elected and does declare the contract void because of such default. *Converse* v. *Blumrich*, 14 Mich. 109 (90 Am. Dec. 230); *Miner* v. *Dickey*, 140 Mich. 518 (103 N. W. 855); *Murphy* v. *McIntyre*, 152 Mich. 591 (116 N. W. 197); *Nelson* v. *Smith*, 161 Mich. 363 (126 N. W. 447).

It is urged that, as complainant had contracted to sell all the lots in controversy, and had executed deeds to 11 of them, she was in no position to declare a forfeiture, and in support of this contention the case of *Getty* v. *Peters*, 82 Mich. 661 (46 N. W. 1036, 10 L. R. A. 465), is cited. An examination of that case shows that the trial court found that the defendant, the vendee in the con-

tracts, had been ready at all times to perform said contract on her part, and this court, on examination of the record, sustained this finding.

In the instant case, can it be said that Lyons or his assignee, Rice, after default in making payments, was ready at all times to carry out the terms of the contract? While the trial court has made no findings of fact, a careful examination of this record does not lead us to such a conclusion. It is true that defendant Rice claimed, on his direct testimony, that on one occasion he went to complainant's house prepared to make a payment on the contract, but would not say for sure that he had the money with him, and, at a later session of the court, on cross-examination, claimed to have made several efforts for payment with the same result. It does not seem reasonable, however, that if he had made a bona fide effort to carry out the contracts he could not have done so. He did not have any difficulty in making a tender both to her and her attorney after notice of forfeiture. As we do not find from the record that such a genuine effort to pay was ever made before the forfeiture was declared, the facts do not come within the ruling of *Getty* v. *Peters, supra.*

In discussing this case, Mr. Justice OSTRANDER, in the case of *Gould* v. *Young*, 143 Mich. 572, 577 (107 N. W. 281), said:

"Indeed, in that case it was expressly found that the vendee was always ready to perform the contract, and that, at the time notice of forfeiture was given, the vendor had no title to the premises. We think no authority will be found for the broad claim asserted at the hearing that defendants may remain in possession without making payments, or being ready or offering to do so, because complainants have, since the contract period began, mortgaged the land."

It is also claimed that Rice was in such possession of the premises, through the signs that were posted on the premises, as to preclude the complainant from seeking relief in a court of equity to quiet title, citing *Beidler* v.

*City Bank of Battle Creek*, 172 Mich. 381 (137 N. W. 717). The premises were vacant lots, and no personal occupancy was had by Rice. There certainly could be no necessity to bring a possessory action under these facts when no personal occupancy or interference would be encountered in the taking of possession. Complainant denies ever having parted with possession of the property, and, moreover, under the terms of the contracts, she was entitled to possession upon default by the vendee. There is no question that, at the time of service of notice of forfeiture, defendants were in default of the payments.

The case of *Lambton Loan, etc., Co.* v. *Adams*, 132 Mich. 350 (93 N. W. 877), is relied upon to sustain the proposition that it was necessary for complainant to resort to one of three actions: (1) A suit in equity to foreclose the contract. (2) An action in ejectment. (3) Proceedings under the statute. In that case, however, the vendee was in actual and physical occupation of the premises, and the court said, speaking of the statutory proceeding to obtain possession:

"The statute was designed to provide a speedy and summary remedy for obtaining possession of lands held over contrary to these agreements, and in doing so it also sought to give the lessee or vendee another opportunity to retain the benefit of his contract by payments within five days, where the failure to pay was his sole default."

The proceeding commented upon was purely a possessory action, and no such proceeding was necessary in the instant case.

We are of the opinion that complainant is entitled to the relief prayed for, and the decree is therefore affirmed, with costs against the defendants Samuel J. Lyons and Merton L. Rice; costs being waived as against the defendant Bessie C. Lyons, for the reason that she was only a passive agent in joining her husband in the quitclaim deed to Rice.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.