TREAT *v.* DETROIT UNITED RAILWAY.

EJECTMENT—REAL PROPERTY — CONDITIONS SUBSEQUENT — NOTICE
OF FORFEITURE.
    Real property conveyed subject to a condition subsequent,
    whereby title shall revest upon failure to perform the condi-
    tion, may not be regained by ejectment proceedings without
    a notice of the particular cause of forfeiture, and of the in-
    tention to claim the right, and a reasonable length of time in
    which to comply.

Error to Oakland; Smith, J.   Submitted February 15,
1909.   (Docket No. 117.)   Decided July 6, 1909.

Ejectment by Joseph A. Treat against the Detroit
United Railway.   A judgment for plaintiff is reviewed
by defendant on writ of error.   Reversed.

*Brennan, Donnelly & Van De Mark* and *James H.
Lynch*, for appellant.

*Aaron Perry*, for appellee.

BROOKE, J.   Plaintiff, on May 24, 1900, and for some
years prior thereto, was the owner of certain lands situ-
ated on section 35 of the township of Oxford.   On that
day he entered into the following agreement with the
Detroit, Rochester, Romeo & Lake Orion Railway:

"This contract, made this twenty-fourth day of May, in
the year of our Lord one thousand nine hundred, between
Joseph A. Treat, of Stuart, State of Iowa, party of the
first part, and the Detroit, Rochester, Romeo & Lake
Orion Railway, a corporation, existing under the laws of
the State of Michigan, party of the second part, wit-
nesseth, that said party of the first part, in consideration
of the sum of one dollar to him duly paid, hereby agrees
to sell unto the said party of the second part, all that cer-
tain piece or parcel of land lying and being situate in the
township of Oxford, county of Oakland, and State of

Michigan, and more particularly known and described as follows:

"Part of the southeast quarter of the southwest quarter of section thirty-five (35), commencing at a point on the south boundary line of said township sixteen and one-half feet west from where the fence on the west side of Lapeer road now is, and running thence northerly to a point two feet east from the southeast black walnut tree now standing on said forty; thence northerly keeping two feet east along the black walnut row of trees now standing nearest said road to the north line of said forty; thence east along said north line to the road fence aforesaid; thence southerly along said road fence to the said south township line; thence westerly along said line to the place of beginning, reserving to said first party the crossings hereinafter mentioned, for the sum of one dollar, which the said party of the second part hereby agrees to pay the party of the first part, as follows, at this date. Said second party shall build and maintain a good and sufficient woven wire fence fifty-four inches high, with cedar posts set not to exceed one rod apart, along the above-described west line, with three suitable gates and gateways therein, one large one in front of the south tenant house where the road or lane now is, one small gate in front of the north tenant house, and one field gate further south, and for entrance to the field. It shall also make and maintain suitable crossings from said highway across said second party's tracks, of plank or coarse gravel to and through said gateways to be filled in if necessary so as to make a good drive and passage way and of easy grade with a load; they, second party, shall construct sewers or bridges so as not to impede the flow of water wherever any and all ditches or watercourses now are or which may be crossed by second party's roadbed.

" Said party of the second part hereby agrees to do and perform the same. And to build and operate a line of railway across said lands propelled by electricity or other motive power than steam.

"And the said party of the first part, on receiving such payment, and the fulfilling of all other conditions mentioned at the time and in the manner mentioned, shall at his own proper cost and expense, execute and deliver to the said party of the second part, or to its assigns, a good and sufficient conveyance in fee simple, of said lands, free and clear of and from all liens and encumbrances, except

157 Mich.—21.

such as may have accrued thereon subsequent to the date hereof by or through the acts or negligence of said party of the second part, or its assigns, said railway to be built and in operation within six months from the date hereof.

"It is mutually agreed between said parties that the said party of the second part shall have possession of said premises on the delivery of these presents and shall keep the same until the said terms shall be paid and fulfilled as aforesaid; and if said party of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall, immediately after such failure, have a right to declare the same void and retain whatever may have been paid on such contract, and may consider and treat the party of the second part as his tenant holding over without permission, and may take immediate possession of the premises, and remove the party of the second part therefrom and said lands shall revert to said first party.

"And it is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties hereto."

The real estate mentioned in the foregoing contract lies on the westerly side of the highway. The grantee entered into possession of the land described, constructed its railway, and began operation within the time mentioned in the contract. It also constructed a fence along the westerly side of the lands occupied by it; crossings leading to the north and south tenant houses and a ditch.

In August, 1901, plaintiff caused to be served upon the grantee a notice as follows:

"To the Detroit United Railway:

"Take notice. You are hereby notified that the contract dated May 24, A. D. 1900, for a right of way, made between the Detroit, Rochester, Romeo & Lake Orion Railway and myself, for the following described lands, viz.: Part of the southeast quarter of the southwest quarter of section thirty-five, township of Oxford, Oakland county, and State of Michigan, commencing at a point on the south boundary line of said township sixteen and one-half feet west from where the fence on the west side of the Lapeer road now is, and running thence northerly to a point two feet east from the southeast black walnut tree

now standing on said forty; thence northerly keeping two feet east along the black walnut row of trees standing nearest said road to the north line of said forty; thence along said north line of said forty to the road fence aforesaid; thence southerly along said road fence to said south township line; thence west along said line to the place of beginning, has not been performed or fulfilled by and on the part of said Detroit, Rochester, Romeo & Lake Orion Railway. Therefore, I hereby declare said contract void. And I hereby demand possession of the lands above described, and that you yield and surrender up quiet and peaceable possession of said lands pursuant to the provisions of the statutes in such case made and provided.

".Dated this fifth day of August, A. D. 1901, at Orion, Michigan.

[Signed] "JOS. A. TREAT."

In August, 1906, a second notice was served upon the defendant herein, which had in the meantime become the owner of the property of the Detroit, Rochester, Romeo & Lake Orion Railway. The second notice was as follows:

"Whereas, on or about the 24th day of May, 1900, a certain land contract, of which the annexed is substantially a true copy, was executed and delivered by the undersigned, Joseph A. Treat, by Wm. E. Littell, his agent in fact, and by Detroit, Rochester, Romeo & Lake Orion Railway, a corporation, by Harry M. Lau, its attorney, and the said corporation has refused and neglected to perform each and every one of the terms, conditions, acts, obligations, and things required to be done or performed by it, under and by the terms of said contract, of all of which the undersigned has heretofore given you and said last above named corporation notice, and the said corporation having failed, as aforesaid, to perform said contract and every part thereof, therefore:

"The undersigned, Joseph A. Treat, who has heretofore declared the said contract to be void, does hereby again declare the same to be void and he has therefore and does now hereby give you and said corporation notice of all said facts and of his determination and election to declare said contract void.

"And you are hereby also notified and required immediately to quit and surrender up to the undersigned, all the lands and premises described in the said contract;

and you have also wrongfully taken possession of certain lands belonging to the undersigned and lying westerly of and adjoining said above mentioned and described lands; you are hereby further notified and required to immediately quit and surrender up to the undersigned all the following lands and premises, to wit:

"Part of the southeast quarter of the southwest quarter of section thirty-five and bounded as follows: On the south by the south line of said section; on the north by the north line of the said southeast quarter of the said southwest quarter of section thirty-five; on the west by the wire fence running northerly and southerly and being the first fence westerly from the track of the electric railway now passing through said section; and on the easterly side of the westerly line of the Lapeer road, so called, where it passes across said section as it existed on the said 24th day of May, 1900, being the line of the fence along the westerly line of said highway, as the same existed on the said last-named date; said parcel of land being in the township of Oxford, Oakland county, Michigan.

"Dated this 6th day of August, 1906.

[Signed]   "JOSEPH A. TREAT."

Plaintiff brought suit in ejectment for the entire strip of ground described in the contract, claiming the right to forfeit the same because:

(1) The defendant was in possession of more land than was described in the contract (which is not denied).

(2) That the defendant had failed to properly perform its covenants in respect to the construction of the crossings and drains.

(3) That in setting the fence provided for in the contract too far west, the defendant had mutilated the tops of certain walnut trees and excavated about the roots of the same in such a manner as in itself to constitute a material and injurious violation of the contract, warranting its forfeiture.

Between August, 1901, and August, 1906, no negotiations were had between the parties, nor did the plaintiff at any time before suit notify the defendant, or its predecessor, in what particular it had failed to perform the contract. It will be noticed that the contract is silent as to the time within which the fence, the drain, and the

crossovers are to be constructed. Nevertheless the defendant or its predecessor in title proceeded seasonably to comply with the contract provisions, presumably in good faith. We are of opinion that, before a forfeiture could be declared by plaintiff, he was bound to give notice of his intention to claim a forfeiture, coupled with a notice to defendant of the particular default of defendant relied upon by him. After such notice the defendant should have reasonable time in which to comply, and thus avoid forfeiture. See Warvelle on Vendors (2d Ed.), §§ 138, 256, 815, and cases there cited; *Getty* v. *Peters*, 82 Mich. 661 (46 N. W. 1036, 10 L. R. A. 465).

It follows, therefore, that in the action at bar the plaintiff should have been limited in his recovery to so much of the land occupied by the defendant as is in excess of the description contained in the contract. The fact that plaintiff from 1901 to 1906 gave no notice to defendant of his dissatisfaction with the method of performance used by defendant, and pointed out no particular in which it was improper, is significant. If after due notice and a reasonable time for compliance defendant neglects or refuses to remedy the alleged defects, the plaintiff will be in position to maintain his action.

Judgment reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.