## AUGUST *v.* COLLINS.

1. VENDOR AND PURCHASER — CONTRACTS—CONSIDERATION—NAKED PROMISE UNENFORCEABLE.

   Where the vendees in a land contract agreed that the title was satisfactory, a subsequent agreement by vendors, made without consideration, to perfect their title and suspend payments in the meantime, was a mere naked promise, and therefore void.

2. ESTOPPEL—WAIVER OF CONDITIONS OF LAND CONTRACT—EQUITY.

   Where the time of performance of a land contract has been waived under such circumstances that it would be inequitable to literally enforce it, the court will apply the doctrine of estoppel to the transaction.

3. SAME—DOCTRINE OF ESTOPPEL NOT APPLICABLE.

   Where the assignee of the vendee in a land contract assumed the contract, which agreed that the title was satisfactory, but subsequently refused to pay any more until the title was perfected and it was furnished with a copy of a contract to the vendors, an agreement by them to furnish it, but which they were unable to carry out because their copy of said contract was lost, did not estop them from enforcing the contract, especially where the record supports the claim that the assignee was merely seeking delay.

Error to Wayne; Dunham (Major L.), J., presiding. Submitted June 23, 1927. (Docket No. 117.) Decided July 29, 1927.

Summary proceedings by Isaac August and another against James J. Collins and the Barnard Toy Company for the possession of property sold on land contract. There was judgment of restitution before the commissioner, and defendants appealed to the circuit

[1]Contracts, 13 C. J. § 607; Vendor and Purchaser, 39 Cyc. p. 1352; L. R. A. 1915B, 55; 6 R. C. L. 916, 917; 2 R. C. L. Supp. 244; 4 R. C. L. Supp. 451; [2]Estoppel, 21 C. J. § 247; Vendor and Purchaser, 39 Cyc. p. 1345 (Anno); [3]Vendor and Purchaser, 39 Cyc. p. 1611 (Anno).

court.    Judgment for plaintiffs on a directed verdict.
Defendants bring error.    Affirmed.

*Louis Starfield Cohane* and *Regene Freund Cohane,*
for appellants.

*Samuel J. Rhodes,* for appellee.

The plaintiffs as vendors entered into an agreement
with one Collins on February 23, 1923, to sell him a
piece of property in Detroit for $85,000; $4,000 was
paid on this day.    The payments were to be made as
follows:    $6,000 balance of down payment in 30 days,
$750 monthly for the first three years, $1,000 monthly
thereafter, all to be paid within eight years.    There
was a mortgage on the premises for $33,000, given
to J. F. Webber, and another mortgage, by way of
deed and contract back, to the United Fuel & Supply
Company, upon which the indebtedness approximated
$14,000.    The attorney for Collins examined the con-
tract with the latter company, and was satisfied with
the condition of the title.    He prepared the contract
between August and Collins, which provided that time
was of the essence of the contract.    As to the title,
it contained this provision:

"It is understood that the title was examined by the
second party and found satisfactory.    Second party
is purchasing the property with the understanding that
it is mortgaged to J. F. Webber, and also a mortgage
to the United Fuel & Supply Company, in the shape
of a deed with an agreement back to J. S. which agree-
ment was assigned to the said first party."

In the following month Collins and defendant com-
pany entered into an agreement whereby Collins
assigned his interest in the contract, and defendant
company assumed the obligations of it in the following
language:

"And the said, the Barnard Toy Company, a Mich-
igan corporation, does hereby assume the obligations

of the contract above referred to and does agree to carry out the same, and does hereby accept the foregoing assignment."

On March 30th, the defendant company drew its check for $6,750, being the balance of the down payment and the monthly payment then due. It is claimed that this check was delivered by defendant company's agent in violation of instructions, and that plaintiffs and their representative agreed to furnish a copy of the contract with the United Fuel & Supply Company. In May a check for the April payment was made out and a letter of instructions was written directing the delivery only on condition that (1) plaintiffs sign a receipt, (2) that they consent to the assignment, and (3) that they furnish a copy of the contract. The check was delivered, however, and it is claimed plaintiffs agreed to furnish a copy of the contract. Defendants' attorney also testified that an agreement was made that:

"They both said all right, that we don't need to make any further payments on that contract and none should become due until they furnished that agreement and that they would bring it in within a couple of days."

It further appears from the testimony that plaintiffs and their representative made diligent search for the contract but could not find it; that it had been lost; that the company refused to furnish a copy of the contract, but that it did furnish defendants' attorney a statement of the amount due on it and its purport. It also appears that at the time of the trial the Webber mortgage had been reduced to $28,000, and the indebtedness to the United Fuel & Supply Company to around $4,500, and that plaintiffs were perfectly responsible financially.

FELLOWS, J. (*after stating the facts*). It is in-

sisted on behalf of defendants that there was a valid contract extending the time of payment as fixed in the contract, and that, if the claimed contract of extension is not valid and enforceable, there has been such waiver of its terms as to estop plaintiffs from its enforcement.

1. It will be noted that it was agreed in the contract, which defendants assumed and agreed to be bound by, that the title was satisfactory. If plaintiffs promised to extend the time and to furnish evidence to show that their title was satisfactory, it was but a naked promise without consideration and not enforceable. The general rule is thus stated in 6 R. C. L. pp. 916, 917, § 301:

"It has been said that a provision of a contract may be waived without a new consideration. But while there are some expressions in the cases which seem to dispense with the necessity of a consideration for a modification of a contract, yet a modification can be nothing but a new contract, and must be supported by a consideration like every other contract. * * * An oral agreement to enlarge the time or change the place of performance fixed by a written contract must be subsequent to the time of the execution of the latter, and constitute an independent agreement of itself, acquiring its binding effect either from an existing consideration at the time, or from having been acted upon by the parties until it could not be disregarded by one party without working an injury to the other party."

In the case of *Bartlett* v. *Smith*, 146 Mich. 188 (117 Am. St. Rep. 625), which involved the extension of time for the performance of a land contract, it was said by Mr. Justice GRANT, speaking for the court:

"The promise to extend the time of payment, if made, was a mere naked promise, resting in parol, without any consideration, and was therefore of no validity."

2. While this court is committed to the rule stated

by Justice GRANT, it is likewise committed to the
doctrine that, where the time of performance has been
waived under such circumstances that it would be in-
equitable to literally enforce the contract, this court
will apply the doctrine of estoppel to the transaction.
Defendants' counsel insist that we should hold that the
facts of the instant case bring it within this rule, and
they rely on *Waller* v. *Lieberman,* 214 Mich. 428;
*Fry* v. *Miller,* 220 Mich. 463; *Letinsky* v. *Smith,*
220 Mich. 467; *Zadigian* v. *Gard,* 223 Mich. 147;
*Bugajski* v. *Siwka,* 200 Mich. 415.    Most of the
cases where we have applied the doctrine have been
equity cases in which the vendee has been seeking
the right to make delayed payments, the right to pay
up, to redeem, and where the vendor by theretofore
accepting payments after they were due has lulled
him into insecurity, and we have held, under such
circumstances, that before the forfeiture could be
effectively declared notice must be given to the vendee
of the intention so to do and a reasonable time given
in which to make the payments.    We have likewise
applied the doctrine in ejectment cases.    *Treat* v.
*Railway,* 157 Mich. 320 (133 Am. St. Rep. 347);
*Sliwinski* v. *Gootstein,* 234 Mich. 74.    In *Drake* v.
*Lippman,* 234 Mich. 80, it was not necessary to de-
cide, and we did not decide, that it should be applied
to summary proceedings, as we there held there were
no grounds of estoppel present.    And that is quite the
situation in the instant case.    The ink was scarcely
dry on the signatures to the agreement by which de-
fendant company assumed the contract and agreed to
be bound by its terms before it insisted it would not
pay according to its terms or pay at all unless plain-
tiffs agreed to its modification, and it claims to have
exacted a promise which subsequent events developed
was impossible of performance.    It claims that all
payments which in fact were made reached the plain-
tiffs because the party to whom it intrusted the checks

violated his instructions.   It was in no way lulled into insecurity.   There are no elements of estoppel present.   Indeed, the question of estoppel was not brought into the case until it was apparent the court was about to direct a verdict for plaintiffs, when defendants' counsel moved for a directed verdict on this ground.   Plaintiffs' counsel insists defendant company was seeking delay rather than an opportunity to pay with safety, and the record tends to support such claim.   Such claim also finds support in the fact that the case was not submitted to this court until over three years after the trial in the circuit.   The trial judge was right in denying defendants' motion for a directed verdict and in granting that of the plaintiffs.

The judgment will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.