BEIDLER *v.* CITY BANK OF BATTLE CREEK.

1. QUIETING TITLE—ADEQUATE REMEDY AT LAW.
   Against a defendant in possession of real property, a bill to quiet title cannot be maintained.

2. TRUSTS—STATUTES—VALIDITY.
   No trust results from the conveyance of land to another than the person paying the consideration at the instance and for the convenience of the latter.

3. SAME—EQUITY—INNOCENT PURCHASER.
   In equity the title of an innocent purchaser from the apparent owner of the record title is as indefeasible as it is at law.

4. SAME—LACHES—FORECLOSURE OF MORTGAGES.
   Where complainant instituted suit six years after he became of age, to enforce a trust in lands held by his uncle, and paid for by his father, who died when complainant was 12 years of age, and where 11 years had elapsed since the uncle had executed mortgages upon the premises, and where the mortgagee over seven years before commencement of suit had foreclosed and bid in the premises which complainant was informed prior to his father's death belonged to the father, laches barred him from maintaining suit to quiet title in himself and to redeem from the mortgage.

Appeal from Calhoun; Hopkins, J. Submitted June 19, 1912. (Docket No. 31.) Decided October 7, 1912.

Bill by Senator R. Beidler against the City Bank of Battle Creek and others to quiet title to certain lands and for the cancellation of several conveyances, and to enforce a trust. From a decree for defendants, complainant appeals. Affirmed.

*W. S. Powers* (*Steward & Jacobs,* of counsel), for complainant.

*George W. Mechem,* for defendants.

OSTRANDER, J. The land involved in this controversy

is a part of the N. E. ¼ of section 14, in the township of Battle Creek, Calhoun county, Mich. The quarter section is fractional, with an irregular boundary along Goguac Lake, and it was originally owned by Joseph L. Foster, and was conveyed by him to Jacob H. Beidler June 30, 1887, by three separate conveyances, in three parcels, and the deeds were recorded. Each of said parcels was separately mortgaged by said Beidler to Foster at the time of the purchase to secure a portion of the purchase money. Jacob H. Beidler executed a plat of Park Beidler August 20, 1887, the land being divided into blocks and lots, and the plat and the dedication thereof was duly recorded. Some of the property was sold and was conveyed by Jacob H. Beidler. Jacob H. Beidler and his wife, April 26, 1892, executed a mortgage upon a portion of the property to one Delevan P. Smiley to secure the sum of $1,000. In the same year, on August 24th, the same parties mortgaged a part of the land to the City Bank of Battle Creek for $1,100. On the same day they gave a deed to the said bank as security for money borrowed. The Smiley mortgage was foreclosed May 2, 1895, the property bid in for $793.66, and was afterwards conveyed by the purchaser to the City Bank of Battle Creek for $600. The City Bank foreclosed its mortgage, and the deed given as security January 11, 1895, in a suit in chancery. The bank sold the property to the defendants Brown, Wilson, and Carr, with other property, in one parcel and for one consideration; their arrangement being evidenced by a land contract.

The complainant in this suit is a son and the only heir of Henry M. Beidler, a brother of Jacob H. Beidler. Henry M. Beidler died December 8, 1888. The original bill of complaint in this cause was filed July 27, 1903, and an amended bill December 27, 1904. Complainant was 28 years old when the original bill was filed. It is his contention that at the time of his death his father was the owner of the premises in controversy, and in this suit he seeks to recover them, subject to such equities and ac-

countings and upon payment of such sums of money as in equity he ought to pay. As to the facts, his claim is that his father was the real purchaser of the property, but that the deed was taken in the name of his uncle, Jacob H. Beidler, for convenience; his mother at that time being a lunatic. His father, by himself and his agent, was in actual possession of the property after the purchase, and such conveyances as were made of portions of it were made at the direction of his father; that his uncle, Jacob H. Beidler, March 27, 1888, executed two deeds, and on November 17th of the same year executed a third deed, by which three deeds he reconveyed all of the property to his father, to whom the deeds were delivered, and who had them in his possession, unrecorded, in December of that year, when he was shot and killed upon the streets of Texarkana, in Texas; that his uncle, Jacob H. Beidler, secured possession of such deeds, fraudulently concealed from complainant and his guardian the fact that said deeds were in existence, did not record them or deliver them for record until an attorney in the employ of complainant, or of his guardian, charged him with unfair dealing with respect to the property, when he admitted the existence of the deeds and delivered them. This was in July, 1903. Prior to that time, and in July, 1902, in recognition of complainant's right to the land, he had deeded the property to complainant, reserving, however, a portion of it for his wife, Rebecca. At the time his uncle so conveyed to him — that is to say, in 1902—complainant did not know that his uncle had ever reconveyed the land to his father. In July, 1902, his attorney informed the officers, or at least the cashier, of the City Bank of Battle Creek, that he was satisfied that all of the property was held in trust by Jacob H. Beidler, who had acted badly with respect to complainant, that complainant was desirous of getting the property back and stood ready to pay the bank the amount of money that it had expended, with costs and accumulated interest. At that time the bank owned the property, but no arrangement

was made, and in 1903 complainant and his attorney again called at the bank, and were informed that the bank did not care to make any arrangement along the lines that had been indicated.

The City Bank of Battle Creek, Martin E. Brown, John D. Wilson, and William Carr are made defendants in the bill, and the relief prayed for is that the mortgages, contracts, and conveyances made by Jacob H. Beidler and his wife, except the deeds to Henry M. Beidler, that all deeds and conveyances made in the foreclosure proceedings, and all made subsequent to the mortgages and growing out of the mortgages and the foreclosure proceedings, be set aside as a cloud upon title and be delivered up to be canceled, but, if any of said mortgages be found to be valid and subsisting liens, then an accounting be had; that the defendants set forth a list and description of every deed, mortgage, contract, book account, letters, papers, and writing relating to the matter, produce such as are in their possession, and account for those out of their possession, set forth an account of all money received by them, or any of them, in respect to any of said conveyances or for rent or profit accruing from the lands or any part of them, with a list of the lots, blocks, or parcels that have been sold or disposed of and at what price or prices and to whom, together with what yearly rent or rents the mortgaged premises have or might have been let for since they have been in possession, and whether they have not, or without their wilful neglect or fraud might not have, received the whole of the rents and profits of said mortgaged premises; that an account be taken of what is now due and owing to the defendants for the principal sum and interest, the rents and profits of the premises or which might have been received for them; and that, if anything is found to be due to the defendants (which complainant offers to pay), defendants be directed to surrender and deliver up possession upon such payment.

Defendants filed a joint answer, and the cause, being at issue, came on to be heard upon the pleadings and upon

proofs taken in open court, and a decree was made dismissing the bill of complaint. The learned trial judge filed a written opinion, and if, as he did, we disregard various objections which were made to the competency and character of the testimony offered on the part of complainant, and consider the case stated for complainant as substantially the case made out by the proofs, we can add little, if anything, to the reasoning he indulged, and must agree with his conclusions.

When the cause came on to be tried, Joseph L. Foster, Henry M. Beidler, Jacob H. Beidler, Delevan P. Smiley, to whom the Smiley mortgage was given, three of the officers of the City Bank, who had charge of its affairs when the loans were made to Jacob H. Beidler, and George Nichols, the attorney who did Jacob H. Beidler's business for some time, were all dead. It is exceedingly doubtful whether complainant has by competent testimony maintained his first and vital proposition of fact, which is that his father purchased the land which was conveyed to his uncle, Jacob H. Beidler. Passing this, it is apparent that complainant claims to have, and has, the senior recorded legal title to the land, that defendants are in possession, and that complainant is out of possession. Under such conditions, a bill filed merely to quiet title cannot be maintained.

Complainant's theory that the bill seeks the recovery of a trust fund is not sustained. If his father purchased the property, taking the deeds in the name of his uncle, no trust resulted. His theory that the alleged trust was executed when Jacob H. Beidler executed the deeds to complainant's father, and that thereafter his uncle held the apparent, recorded, legal title, and the said deeds in trust for his father and his father's heir, cannot avail him for several reasons. None of the defendants participated in the alleged fraud. It is clear that Smiley and the bank were innocent purchasers, and, being such, their titles are as indefeasible in equity as in law.

172 Mich.—25.

But, assuming that equitable interference with the title was otherwise warranted, complainant has been guilty of laches. He testified that from the time he was a small boy he was his father's constant companion up to the time of his death, and that from what his father told him, and from what he had heard him say to his uncle and others, he knew that the deeds were made in his uncle's name that he might not be hindered in making titles when sales were made. He was more than 12 years old when his father died, was continually asking his uncle with respect to his father's property, had heard rumors respecting this particular property, visited the property about the year 1900, talked with a man whom it is claimed his father left in possession of the property, and he then claimed to own it. This alleged agent of his father wrote to him about the time he became of age, telling him the facts now relied upon, but it was not until late in 1903 that his bill of complaint was filed, and still later amended so as to include a claim under the deeds alleged to have been delivered by his uncle to his father in his lifetime. At that time eleven years had elapsed since the giving of the mortgages to Smiley and the bank. They had been foreclosed for seven years, and it was six years after complainant attained his majority. The testimony supports the inference that in the meantime the property had greatly appreciated in value, and had become somewhat popular as a summer resort. A street railway had been built to it. The defendant bank had purchased other property for the purpose of reaching the lake and for the purpose of connecting the two separated pieces of property which it acquired by foreclosure. For the reasons stated, the bill cannot be maintained as one to redeem.

The decree is affirmed, with costs to the appellees.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.