SCHOOL DISTRICT NO. 2 OF SYLVAN TOWNSHIP, WASHTENAW COUNTY *v.* MUSBACH.

1. EQUITY—JURISDICTION—REAL PROPERTY—VALUE.

Equity will not dismiss a bill to quiet title for want of jurisdiction, if the evidence does not disclose that the value of the property in dispute is less than $100; the fact that the parties to the litigation entered into a tentative settlement or compromise of the questions in dispute fixing a less value than $100, subsequently failing to act upon the agreement, will not control the matter of jurisdiction even if the evidence of compromise is competent.

2. QUIETING TITLE—POSSESSION.

A bill to quiet title cannot be maintained against a party in possession. Act No. 256, Pub. Acts 1909 (4 How. Stat. [2d Ed.] § 11965).

3. SAME—FRAUDULENT TAKING POSSESSION.

   No such fraudulent or forcible assumption of possession
   appeared as to deprive defendant of his right to make
   claim thereto in a case in which he had openly advised
   complainant of his claim to ownership, and threatened to
   fence in the land, and later without using any force en-
   closed the land with other property held by him, having
   the record title of the parcel in dispute.

Appeal from Washtenaw; Kinne, J. Submitted
April 18, 1913. (Docket No. 93.) Decided July 9,
1913.

Bill by School District No. 2, Sylvan Township,
Washtenaw County, against Henry Musbach and an-
other to quiet title to real property. From a decree
for complainant, defendant appeals. Reversed.

*Stivers & Kalmbach,* for complainant.

*A. F. & F. M. Freeman,* for defendants.

STEERE, C. J. Complainant filed its bill in this case
for the purpose of removing the cloud from the title
of a small triangular piece of land, consisting of about
one-eighth of an acre, alleged to be a portion of its
schoolhouse grounds. Complainant's schoolhouse is
located between four and five miles west of the village
of Chelsea, in Washtenaw county, on a site in the
extreme northwest corner of section 17, town 2 north,
range 3 west, facing west on a highway running north
and south on the section line. It is conceded com-
plainant owns about one-quarter of an acre of land
in the corner of said section, upon which are located
the schoolhouse, woodshed, some shade trees, and
other appurtenances of a typical country school. The
triangle in controversy joins this on the north, being
in section 8, and described as—

"Commencing at post on section line between sec-
tions 8 and 17 where the wire fence, running along

the east side of schoolhouse, intersects said section line, and running thence west 85 feet; thence north 122 feet; thence southeasterly to the place of beginning, being a triangular piece of land located in southwest corner of the west half of the southwest quarter of section 8."

Said district No. 2 was organized in an early day, and has maintained a schoolhouse upon its present site for 50 years or more. Defendants reside on section 8, 50 or 60 rods north of the schoolhouse site, owning 60 acres of land in the southwest quarter of said section.

One Christopher Herzer, defendants' predecessor in the regular chain of title was, from an early date until he died in 1878, the owner of the land in section 8, north of the schoolhouse, of which the disputed triangle was the extreme southwest corner. This triangle, together with the lands adjoining, was for many years wild timber land, mostly unfenced, lying open to the public highway; there being no fence between sections 8 and 17. The triangle was a somewhat hilly piece of land, sloping to the north, and from the time the school was established there the children used it, and as much of the adjacent woods to the north as they desired, for a playground in connection with the school grounds—coasting upon the hilly part in the winter, sometimes breaking down the small trees and bushes. With a view to using his wood lot as a pasture, Herzer, in 1874, erected a fence along the north and south highway between sections 7 and 8 to within 122 feet of the section corner at the northwest of the schoolhouse, and from there, leaving this triangular piece open to the school grounds and highway, so that the school children could use it as a playground, he ran his fence diagonally southeast to a point on the north line of section 17, where complainant's east line intersects said line. The testimony seems quite clear that he left this small, tri-

angular piece of ground adjoining the balance of the schoolhouse site unfenced and open that it might be used as a playground by the children, for the time being at least, hoping that they would confine their activities to that side of the fence and refrain from trespassing upon his land at the rear.

It is the claim of complainant that Herzer at that time donated this triangle to the school district as a playground, that it was in possession of the district, so used and occupied, for over 15 years, and until defendants took possession in 1910 and fenced it in with their adjacent farm, at a time when the school district had become the rightful owner by donation and prescription; that defendants' possession was therefore tortiously taken, and has since been unlawfully held. On the part of defendants, donation to and adverse possession by complainant is denied; a clear chain of title to the land is shown to be in them by mesne conveyances of public record up to the time of commencing this suit; it is contended that the value of the property is less than $100, hence below the jurisdiction of a court of chancery, and a bill to quiet title must fail because it is alleged in complainant's bill, and shown by the evidence, that at the time of beginning suit defendants were in possession of the land in dispute.

There is some conflict in the testimony as to the exact size of this triangular piece of land, the only importance of which, if any, is its bearing on the value of the tract. The record shows that at one stage of this litigation the parties wisely entered into a stipulation of settlement by which the school district was to secure the triangle in dispute, with approximately as much more land, for $125 and $20 costs, but unwisely failed to consummate the deal, and the suit went on. This is urged by the defense as sufficient evidence of value, not directly of the land in contro-

versy, but of the same class of land adjacent, to warrant the court in dismissing the suit because the amount involved is shown to be less than $100. That its value is small is evident, but certain of complainant's witnesses place the same at over $100. We are not satisfied that values shown by the terms of a tentative settlement should be considered, or, even if entitled to be recognized as evidence, should control.

It is shown by the testimony of various witnesses called by complainant that Herzer said, at about the time he fenced in the adjacent land and left this piece uninclosed, "that he was going to give this triangular piece of land to the school district," and later said that he had done so; that he at one time told a teacher that he had given the land for a playground, and the children had ample room to play there, with trees to swing on, and he desired the district to see to it that teachers kept them out of his woods. We find no evidence that they did so, or that there was any formal acceptance or recognition of the gift by the school authorities. The children played there as before; the triangle lay open to the road, the schoolhouse yard remained as before, and no other or different acts of ownership or possession on the part of complainant are shown; no care or attention was given it by the school authorities.

Defendant Henry Musbach acquired title to the property from his father, in connection with the adjacent land in 1905. He and his father cut timber from it from time to time as they saw fit, without protest from any source. He rebuilt the old diagonal rail fence, inclosing the land back of it, when a better fence was needed, and the children continued to play there undisturbed. In 1910 he built a new wire fence along the boundary lines of his land, and "squared up" his farm, as he testifies, by following the section lines, and including the triangle to which he had the record title, and which he claimed to own.

In the meantime, seven or eight years before he inclosed the triangle with his other land, the school district officers, for the purpose of beautifying and improving the schoolhouse grounds, planted trees around the premises, set at uniform distances inside the boundary lines, and on the north side of the schoolhouse set a row of trees on the south side of the section line forming the south boundary of the triangle. Two officers of the school board directed and assisted in planting these trees. They planted none upon the triangle.

In 1911, a year after Musbach had inclosed the triangle with the adjacent land, it was decided and voted at a school meeting to build a new fence around the schoolhouse site. The school director thereupon employed an old resident of the district, who himself had formerly been a school officer for many years, to build this fence. He built a new fence on three sides, leaving the front along the highway open, and in doing so took up the fence defendant Musbach had built on the section line on the north, replacing it with a new fence, uniform with the rest of the fence around the schoolhouse. Certain residents of the district raised the question of defendants' right to this triangle shortly after he inclosed it, and at a school meeting held July 11, 1910, the record shows:

"Motion to take a vote whether Musbach move his fence or not. Motion carried."

Following this, the fence Musbach had built was replaced, as before stated, on the south side of the triangle, leaving defendants in possession of the same. It was later claimed by some that this was without authority and by mistake, and at a school meeting held in July, 1911, a resolution was passed reciting that "Henry Musbach has taken possession of a portion of the school lot belonging to the district," and authorizing the school officers of the district to "take

such legal steps as may be necessary to recover possession of said premises."

On February 12, 1912, this bill was filed to quiet title, stating, amongst other things, that complainant "is in the legal possession of the absolute title in and to said premises," and quoting, apparently as authority for commencing suit, the resolution above referred to, which states in unequivocal language that Musbach "has taken possession" of the premises and authorizes legal proceedings to "recover possession."

That a bill to quiet title cannot be maintained by one out of possession against one in possession is not open to question. 1 Comp. Laws, § 448 (amended Act No. 256, Pub. Acts 1909, 4 How. Stat. [2d Ed.] § 11965), and authorities there cited; *Moody* v. *Macomber*, 158 Mich. 209 (122 N. W. 517). This question was early raised in the case by defendants' answer, denying possession by complainant, alleging possession in themselves before and at the time of commencing suit, and claiming the right of demurrer on the ground "that it does not appear by the bill, as filed, that the same is a proper bill of complaint to be filed in such cases." On the hearing of the case, after complainant's solicitor had made his opening statement, defendants' solicitor objected to any testimony being admitted because, amongst other things, "there is no equity in the bill; * * * the bill of complaint, under the statement of counsel as already made, does not state a cause of action," and "if the statement of counsel be true the complainant has an adequate remedy at law." It is clearly apparent from both the pleadings and proofs in this case that at the time suit was commenced defendants were in the actual, open, physical possession of this triangle, under a claim of ownership, and that complainant was out of possession.

"Under such conditions, a bill filed merely to quiet

title cannot be maintained." *Beidler* v. *City Bank of Battle Creek*, 172 Mich. 381 (137 N. W. 717).

It is contended in behalf of complainant that the possession of defendants is not sufficient to be considered and prevail under the foregoing rule, because it violated complainant's prior possession, was acquired by sharp practice, and taken unlawfully by force and fraud (citing 32 Cyc. p. 1342; *Bigelow* v. *Sanford*, 98 Mich. 657 [57 N. W. 1037]). The only proof of any possession by complainant is that the school children used the land as a playground when it lay open, unfenced, and as a commons. Musbach claimed ownership, and had threatened to the members of the school board that he would fence it in some time before he actually did so. Holding the legal title, and under a claim of ownership, he inclosed this tract, previously uninclosed by any one, with his other land, openly, without force against any one in possession, and by peaceful measures. It was not done surreptitiously, by force or trick or fraudulent representations practiced on those who otherwise might have maintained a previous possession. Under the facts in this case the authorities cited by complainant are not in point.

For the reason stated the decree of the lower court must be reversed, and complainant's bill dismissed, with costs to defendants.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.