WONDER PRODUCTS, INC., v. BLAKE.

1. CONTRACTS—DEFAULT—RESCISSION.

A party to a contract has a right to offer to rescind it, even if in default.

2. VENDOR AND PURCHASER—ACCEPTANCE OF OFFER TO RESCIND.

Purchaser's offer to rescind contract to purchase real estate and bottling plant located thereon was accepted by vendor where latter, instead of rejecting offer and declaring or threatening to declare the contract forfeited chose to try to placate the purchaser by a counteroffer and, upon its rejection, accepted keys and possession without demurrer and without complying with contractual provisions for its termination.

3. SAME—DEFAULT—FORFEITURE.

A vendor may choose to forfeit the purchaser's interest in a contract after the latter is in default, but a forfeiture must be declared, especially where the contract provides for such forfeiture.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 55 Am Jur, Vendor and Purchaser, § 579.
[3] 55 Am Jur, Vendor and Purchaser, §§ 634, 635.
[3] Right of vendor in contract for sale or exchange of real property to bring suit for forfeiture, foreclosure, or rescission, or to quiet title or recover possession, without first giving notice, or making demand for possession.  94 ALR 1239.
[4, 5] 55 Am Jur, Vendor and Purchaser, § 534 et seq.
[4, 5] Vendee's right to recover back amount paid under executory contract for sale of land.  59 ALR 189; 102 ALR 852; 134 ALR 1064.

4. SAME—CONDITIONAL OFFER OF POSSESSION—ABANDONMENT—FOR-
    FEITURE.
    A purchaser's offer to return possession of real and personal
        property, conditioned upon repayment of money paid under
        contract of purchase of real and personal property does not
        constitute an abandonment of the contract making a decla-
        ration of forfeiture by the vendor unnecessary.

5. SAME—RESCISSION—REPAYMENT OF MONEY PAID.
    A vendor who accepts a purchaser's offer to rescind, condi-
        tioned upon repayment of money paid under contract of
        purchase of real and personal property, becomes obligated
        to pay back payments the purchaser has made.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 10, 1951. (Docket No. 60, Calendar No. 44,968.) Decided April 3, 1951. Rehearing denied May 14, 1951. Certiorari to Supreme Court of the United States denied October 15, 1951.

Action by Wonder Products, Inc., a Michigan corporation, and another against David R. Blake and wife to recover payment made on contract later rescinded. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Orrin C. Jones,* for plaintiff.

*Ralph K. Panzer* (*Leo F. Covey,* of counsel), for defendants.

*Moll, Desenberg & Purdy,* for defendants on application for rehearing.

BUTZEL, J. Wonder Products, Inc., a Michigan corporation, plaintiff herein, is solely owned by Edgar A. Isler, also plaintiff. We shall refer to Isler only.

On October of 1948, Isler was attracted by an advertisement offering a bottling plant in Ferndale, Michigan, for sale. The plant was owned by David and Betty Blake, defendants, doing business as the

Wonder Orange Bottling Company. After negotiations, Isler purchased the plant for $59,000; $9,000 of which was to be paid on November 19, 1948, the day the contract was entered into, an additional $3,000 in 60 days, and the balance in quarterly instalments thereafter. The sale included land in Ferndale, Michigan, the building thereon, and a large amount of personal property including the machinery and equipment necessary to manufacture, bottle and distribute soft drinks known as Wonder Products. It also included the going business with customers routes and a franchise to sell Wonder Products. The contract contained the following clause frequently found in standard forms for the sale of real estate:

"If purchaser shall fail to perform this contract or any part thereof, the seller immediately after such default shall have the right to declare the same null and void and retain whatever may have been paid hereon, together with all improvements that may have been made upon the premises, and consider and treat the purchaser as a tenant holding over without permission, and may take immediate possession of the premises."

This clause only refers to real estate.

The contract also contained the following clause in regard to the personal property:

"In the event of default in the terms of this agreement, and if sellers shall declare the entire amount owing thereon to be due and payable forthwith, sellers are hereby authorized to take possession of any or all of such personal property and equipment, and dispose of the same in a like manner as upon foreclosure of a chattel mortgage under the laws of Michigan."

The contract distinguishes the real estate from the personal property and equipment, the latter including the machinery, the list being set forth in

some detail, taking up over a page of the printed record.

In the plant at the time of the negotiations and sale there was a 2-year-old Niagara bottle washer, a very large and important piece of machinery. Blake told Isler that he had contracted to sell this machine and agreed,

"To install a bottle-washing machine in substitution of the present one, at their (Blake's) expense, at such time as shall be mutually agreeable, said bottle machine to be free from liens and other charges."

The machine thus substituted was a Meyer Dumore bottle-washing machine, some 20 years old, which Blake had purchased for $1,000 from another bottling works which had bought it secondhand. It had been in storage for a year before it was sold to the defendant. He had sold the Niagara bottle-washing machine, which had cost him $6,500, for $3,000, or so he thought, for he failed to produce his books at the trial when asked to do so. Difficulties that arose in the operation of the Meyer Dumore bottle-washing machine caused the subsequent trouble.

The bottle-washing machine is a vital part of the business, cleanliness of the bottles being of the very essence. According to the testimony of plaintiff there was constant breakage of bottles and foreign matter and dirt were not entirely removed from many of the bottles during the washing process. Plaintiff testified that Blake had told him he was substituting a new machine, but Blake denies that he had ever made this representation. The court believed Blake. The contract itself did not specify that the substituted machine should be a new one, but the natural inference would be that plaintiff was not told that this third-hand machine, some 20 years old, was to be substituted for a 2-year-old machine. It took considerable time before the substituted ma-

chine was fully installed and ready for operation. Thereafter, there were very frequent breakdowns.

On January 18, 1949, the $3,000 payment became due, but the parties did not meet until January 20th, when Isler told Blake that he was rescinding the con-tract because of Blake's breach by installing the un-satisfactory machine. He offered Blake the keys to the plant and demanded his money back. He told Blake that he had lost some $1,500 in the first 2 months of operation. Blake offered to reduce the payment by $1,500 and accept $1,500 as payment in full on the $3,000 due. This offer was refused by Isler. Blake then refused to take the keys until he had talked with his attorney. Blake admitted that Isler had a grievance and that he was entitled to some adjustment because of the delay before the business could be properly started. He ascribed the trouble to the fact that Isler left the running of the business to inexperienced employees, and the trial judge so held. Although the original advertisement inserted by Blake's real estate agent is not in the record, the cross-examination indicates that it stated that no previous experience was necessary to run the business. The contract itself provided that Blake or some other designated person would train Isler, or his representative, in the operation of the plant. The trial judge, however, upheld Blake's claim that the breakdowns were largely caused by Isler's inexperienced employees.

On January 24, 1949, Isler's attorney sent Blake a letter in which he said that Blake had materially breached the contract to sell a going business, and added:

"My clients tendered the keys and possession of the premises on January 20th and now stand ready and willing to execute and deliver any release, as-signment or other document necessary to return you

to possession free from their claims, upon repayment of the sums heretofore paid on or in connection with the contract."

Upon receipt of the letter on January 25th, Blake sent an employee to Isler's home to pick up the keys. On January 27th, Blake wrote Isler again offering to reduce the contract price by $1,500, or in the alternative to replace the Meyer Dumore "with a Niagara of equivalent age and condition as that installed in the place at the time you bought." This offer was refused.

Blake, very shortly thereafter, sold the plant to one Winters for $62,500. Winters had trouble with the machine, but was able to overcome a part of this by the expenditure of a small sum for alterations, and by employing an extra girl to remove all unclean bottles as they came through the machine.

Isler brought this action to recover the $9,000 he had paid, plus expenses and damages, on the theory that there had been a rescission after Blake's material breach, and on other grounds that were either without merit, or not pressed. Blake defended on the ground that the machine was satisfactory, that a breach had occurred when Isler refused to pay the instalment due on January 18th, and that the repossession was in conformance with the express language of the contract and not as a result of the rescission.

The action was tried without a jury. The trial court found that the bottle washer was satisfactory, that the difficulties in its operation were due to the inexperience of Isler's employees, and that Blake had fulfilled his promises. The bulk of the testimony at the trial concerned the bottle-washing machine and, while there was sufficient evidence to support a finding of fact by the trial judge, it was a conclusion

upon which reasonable men could have differed. The judge saw and heard the witnesses.

In its opinion the lower court said:

"Whether this be called an abandonment of the contract by the plaintiffs, or merely a refusal to conform to the terms of the contract, or an attempted rescission, is immaterial. Plaintiffs' actions of January 20, 1949, in refusing to continue further with the contract, and demanding to be placed *in status quo,* constituted a clear breach of the contract by the plaintiffs, and authorized the defendants to treat the contract as rescinded, and ended by the plaintiffs. *Pearce* v. *Alward,* 163 Mich 313; *Buys* v. *Travis,* 243 Mich 470; 12 Am Jur, § 438, p 1018."

Plaintiff has limited his appeal to the recovery of the $9,000 paid on the contract.

The issue in this case is quite narrow and involves only an application of the simple principles of contract law. A party to a contract, even if in default has a right to offer to rescind a contract. *Brow* v. *Gibraltar Land Co.,* 249 Mich 662; *Lightner* v. *Karnatz,* 258 Mich 74. Isler made an offer to rescind.

Blake must have appreciated that Isler had a real cause for complaint, for instead of rejecting the offer and declaring or threatening to declare the contract forfeited, he chose to try to placate Isler by offering to reduce the payment. When the counteroffer was rejected, and Isler repeated the original offer Blake accepted the keys and possession without any demurrer. Blake's actions must be construed as an acceptance of Isler's offer to rescind. *Ludowici-Celadon Co.* v. *McKinley,* 307 Mich 149; *Malooly* v. *York Heating & Ventilating Corp.,* 270 Mich 240.

If there were any doubt as to the legal effect of Blake's actions, they would be resolved by his immediate resale of the premises, and the personal property and equipment contained therein. The con-

tract, in express language, authorized Blake to dispose of the personal property and equipment "in a like manner as upon foreclosure of a chattel mortgage," and only after there had been a declaration that the entire amount owing was due and payable forthwith. These conditions were not met. Since Blake did not proceed under the contract, it is presumed that he was acting under the belief that the contract had been rescinded.

The trial court erred in ignoring the nature of the dealings between the parties. It is true that after a purchaser fails to make a payment the vendor may choose to forfeit the purchaser's interest in the contract, but this can be done only by declaring a forfeiture. *Donnelly* v. *Lyons,* 173 Mich 515; *Hupp Farm Corp.* v. *Neef,* 294 Mich 160. The vendor, however, may not ignore the provisions of a contract in regard to foreclosure in event of default in payment for personal property.

Appellee contends that Isler's refusal to continue payments constituted an abandonment of the contract and that no declaration of forfeiture was necessary. There is no suggestion in the record that Isler abandoned the contract. His offer to return possession was conditioned on the repayment of his money.

Blake thought it prudent to accept Isler's offer to rescind at the time of the dispute. He cannot now claim the benefit he received from the rescission and retain the fruits he may have gained from a forfeiture. By accepting Isler's offer to rescind, Blake obligated himself to pay back the $9,000 that Isler paid on the contract.

The judgment of the circuit court is reversed and the case is remanded for action in accordance with this opinion. Costs to appellants.

REID, C. J., and BOYLES, NORTH, CARR, BUSHNELL, and SHARPE, JJ., concurred with BUTZEL, J. DETHMERS, J., concurred in the result.