HAREL BUILDERS, INC. *v.* PARKLANE HOMES, INC.

1. MOTIONS—SUMMARY JUDGMENT—AFFIDAVITS—GENERAL DENIAL—PARTICULAR FACTS—EVIDENTIARY SUPPORT.
    A defendant's affidavits in opposition to a motion for summary judgment cannot merely make a general denial of the plaintiff's right to recover nor state factual conclusions, but must state facts with particularity which, if proved at trial, would create a material issue of fact and must show that there is real evidentiary support of his position as taken in the pleadings (GCR 1963, 117.2).

2. MOTIONS—SUMMARY JUDGMENT—AFFIDAVITS—GENERAL DENIAL.
    Summary judgment ordering that the defendant refund the plaintiff's deposit money because the defendant had failed to fulfill the contract of sale requirements was proper where the contract

---

REFERENCE FOR POINTS IN HEADNOTES

[1, 2]  41 Am Jur, Pleading §§ 340–343.

provided for a refund of the deposit money if certain requirements were not met, the plaintiff's affidavit enumerated the requirements not met, and the defendant's opposing affidavit merely alleged that the defendant had fulfilled the requirements, because the defendant failed to show real evidentiary support of its position in its pleadings and merely stated factual conclusions (GCR 1963, 117.2).

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 November 13, 1970, at Detroit. (Docket No. 9455.) Decided January 22, 1971.

Complaint by Harel Builders, Inc., against Parklane Homes, Inc., Security Bank and Trust Company, and Holland Homes, Inc., to recover monies paid on contract. Summary judgment for plaintiff and for defendant Holland Homes. Defendant Parklane Homes appeals. Plaintiff cross-appeals. Summary judgment for plaintiff affirmed.

*Karbel, Eiges, Rothstein & Karbel,* for plaintiff.

*Schmier, Schmier & Dakmak* (by *Sheldon A. Fealk*), for defendant Parklane Homes.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Michael B. Lewiston*), for defendant Holland Homes.

Before: McGregor, P. J., and Holbrook and O'Hara,* JJ.

Holbrook, J. This action commenced October 3, 1969. It deals with a contract dated January 20, 1969, to purchase land in Wayne County by Harel

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Builders, Inc., a Michigan corporation, plaintiff, from Parklane Homes, Inc., a Michigan corporation, defendant. The contract was recorded in the Wayne County Register of Deeds Office. Plaintiff paid a down payment to defendant of $20,000, and this action was brought by plaintiff to recover this sum from defendant. After defendant had filed an answer to plaintiff's amended complaint, plaintiff made a motion for summary judgment under GCR 1963, 117.2(2), (3).[1]

The trial court granted summary judgment in favor of plaintiff and against the defendant for $20,000, based upon the pleadings, the affidavits of the parties, and oral argument. Defendant has appealed and plaintiff has cross-appealed.

Paragraphs 5, 6, 11, and 12 of the contract are the pertinent parts of the contract to be considered for a decision.[2]

---

[1] "(2) the opposing party has failed to state a valid defense to the claim asserted against him,

"(3) that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law."

[2] "5. If title can be conveyed in the condition required hereunder, purchaser and seller agree to complete the sale within ten days after completion of the conditions set forth in paragraph 11. In the event of default by the purchaser hereunder, seller may retain the deposit as liquidated damages as its sole and exclusive remedy in the event of such default.

"6. In the event of default by the seller hereunder, the purchaser may, at his option, elect to enforce the terms hereof or demand, and be entitled to, an immediate refund of his entire deposit in full termination of this agreement.

\* \* \*

"11. Seller covenants and agrees to perform, complete, and pay for all improvements and other acts hereinafter listed, and it is further agreed that said land contract will not be executed and the balance of the down payment need not be paid until all improvements, etc., listed herein are in and completed and accepted by the proper authority approving the complete subdivision, and evidence of the completion thereof furnished to purchaser by title policy commitment and by such other evidence as should satisfy purchaser and escrow agent hereinafter named, that seller has complied with these requirements and conditions:

On September 2, 1969, plaintiff Harel wrote to defendant Parklane a notice stating there:

"Parklane Homes, Inc.
c/o J. Rusling Cutler
193 N. Main Street
Plymouth, Michigan    48170
and
Security Bank & Trust Company
1605 Fort Street
Lincoln Park, Michigan

Re:    Agreement for Purchase and Sale of Real
       Estate dated January 20, 1969, and recorded in
       Liber 16907, page 452, on January 22, 1969, in
       Office of Register of Deeds, Wayne County,
       Michigan.

Gentlemen:

Parklane Homes, Inc., as seller, has failed, on or before September 1, 1969, to comply with the terms of said agreement; has failed to complete and per-

"a. Improvements, utilities, and installations, except those herein excluded, including water service to building site (purchaser agrees to tap water to the houses), underground utility placements, survey, leveling off of the total site for construction of houses with basements. It is agreed that seller pays for and completes installation of sewer and water lines to the property, but seller is not responsible if damage is done to utility lines during construction work by the purchaser. All sewers to be of proper depth to allow construction of houses with basements. Manholes, catch basins, and sewers are to be set to the proper grade at time of installation. If the manhole and catch basins are not to proper grade, seller shall correct at its expense.

"b. Plat, which seller represents, has already been approved by Township of Plymouth, shall be recorded and all requirements shall be completed to validate or accomplish such platting, including obtaining of necessary approval from state, county, and township for the complete plat.

"c. Proper assurance to attorneys for purchaser that seller's title to the real estate is clear and marketable as shown by a title policy commitment, bearing date within ten days of effective date of land contract, whereby title company agrees to issue title policy subject to the usual or standard exceptions, in amount of $426,000.

"d. Seller has paid off or satisfactorily arranged for payment of all obligations whatsoever against this property (including plat and recording plat, engineering, installing all improvements, escrow costs, title policies, and stamps, etc.) and that there are and will be no

form the conditions precedent, as set forth in that agreement and did not, among other things—

A. Perform, complete and pay for all improvements, and other acts listed in ¶11 of such agreement, and all subdivisions thereof.

B. Complete and obtain acceptance of authorities approving complete subdivision and furnish evidence of such completion by title policy commitment.

C. Complete all of the improvements, utilities, and installations, including the leveling off of total site for construction of houses with basements, installation of gas and electricity to houses.

D. Complete fully all requirements to validate or accomplish validating of platting, including obtaining of necessary approval of state, county, and township for complete plat.

E. Furnish attorneys for purchaser that assurance that title to real estate is clear and marketable as shown by a title policy commitment, issued by Lawyers Title Company, bearing date within ten (10) days of effective date of land contract whereby title company agrees to issue title policy in amount of $426,000.

F. Complete improvements to subdivision so that it meets all qualifications and requirements of all governental bodies and so that purchaser might obtain permits, etc.

Because of seller's failure to perform and failure to comply on or before September 1, 1969, with the terms of such agreement and especially ¶11 thereof, purchaser does hereby cancel the said agreement and demands refund of deposit of $10,000 from seller and $10,000 from the Security Bank & Trust

---

liens or encumbrances on such premises, except current taxes which will be prorated on a date due basis, as of the date of closing.

\* \* \*

"12. It is further agreed that if the seller's obligations under paragraph 11 are not fulfilled by September 1, 1969, then, at purchaser's option, this agreement may be cancelled and the deposit shall be refunded to the purchaser by the seller and the escrow agent."

Company as escrow agent, in accordance with ¶12 of such agreement.

Upon receipt of the amount of $10,000 from seller and $10,000 from Security Bank and Trust Company, as escrow agent, the purchaser will deliver to seller the quit claim deed from Harel Builders, Inc., to Parklane Homes, Inc., a Michigan corporation, conveying all of its rights, title and interest in the property involved herein."

On September 8, 1969, Albert Simkins, president of defendant, executed an affidavit in form and substance as follows:

"State of Michigan)
County of Wayne) ss:

"Albert Simkins, being duly sworn, deposes and says that he is the president of Parklane Homes, Inc., a Michigan corporation; and that

"On the 20th day of January 1969, Parklane Homes, Inc., as seller entered into an agreement for the purchase and sale of certain real estate hereinafter described with Harel Builders, Inc., a Michigan corporation, as the purchaser, which agreement was placed on record in the office of the Register of Deeds for Wayne County, Michigan, in Liber 16907, on page 452, Register No. F–355632; and that

"By the terms of said agreement a land contract was to be entered into for the purchase and sale of certain real estate in the Township of Plymouth, Wayne County, Michigan, described as:

"That part of the E. 1/2 of the S. W. 1/4 of Section 34, described as beginning at a point on the North and South 1/4 line of said section distant N. 0° 03′ E. 996.22 ft. from the S. 1/4 corner of said Section 34; proceeding thence N. 89° 50′ 40″ W. 951.10 ft.; thence N. 0° 01′ 30″ E. 199.15 ft.; thence N. 89° 58′ W. 378.34 ft.; thence N. 0° 01′ 30″ E. 513.81 ft.; thence S. 89° 50′ 40″ E. 1329.75 ft. to the North and South 1/4 line of said section; thence

S. 0° 03′ W. along said line 712.08 ft. to the Point of Beginning; containing 20 acres of land more or less;

"and that

"On the 4th day of September 1969, Parklane Homes, Inc. received a notice by certified mail from Harel Builders, Inc., a copy of which is attached hereto, that 'Purchaser does hereby cancel the said agreement.': and that

"By reason of such notice of cancellation all rights or interests in the land heretofore described which may have been held by Harel Builders, Inc. are terminated.

"(Sgd)  Albert Simkins
             Albert Simkins"

The affidavit with plaintiff's letter of notice attached was duly recorded in the Register of Deeds Office of Wayne County on September 18, 1969.

On October 3, 1969, defendant Parklane completed an agreement of sale for the subject property with Holland Homes, Inc. The price paid by Holland was $10,650 more than the contract price agreed upon by plaintiff Harel and defendant Parklane.

Holland Homes, Inc., was made a party defendant by plaintiff and a summary judgment was granted in favor of Holland at the same time plaintiff was granted its summary judgment.

Defendant raises one issue:

Was summary judgment properly granted in favor of the plaintiff?

Defendant asserts that the ruling of the trial judge that there were no genuine issues of material fact in the case was erroneous. Defendant claims two fact issues were present:

(1) Whether Parklane had in fact complied with the requirements of paragraph 11 by September 1, 1969?

(2) Whether Parklane had accepted the cancellation of the contract?

## I

In the affidavit of Harry H. Dubbs, president of Harel, filed in support of the motion for summary judgment it is stated in part:

"4. On September 2, 1969, and thereafter at Parklane Meadows Subdivision, Plymouth Township, Wayne County, Michigan (the property involved in the above entitled cause) the following facts obtained.

"A. There had not been started or completed the installation of utilities as required by paragraph 11a of said agreement. Neither electrical, nor gas, nor telephone lines had been installed nor had such installations even been started.

"B. The total site had not been leveled off for construction of houses with basements as required by said paragraph 11a of said agreement.

"C. The title policy commitment in the amount of $426,000 required by paragraph 11c of said agreement had not been delivered.

"D. A mortgage in the amount of $180,000 in favor of Manufacturers National Bank of Detroit existed and was on record in Liber 16804, page 62, Wayne County records, in violation of paragraph 11d of said agreement. A certified copy of said mortgage is attached hereto and incorporated herein.

"5. On September 2, 1969, plaintiff through its then president, Ellis Brownstein, exercised its option, as contained in paragraph 12 of said agreement, to cancel the agreement by executing and causing to be sent to defendants Parklane Homes, Inc., and Security Bank and Trust Company a written notice, a copy of which is attached to the amended complaint, the contents of which are adopted herein by reference.

"6. On September 8, 1969, the president of defendant Parklane executed an affidavit, incorporating said written notice of exercise of option and declaring 'By reason of such notice of cancellation all rights or interests in the land heretofore described which may have been held by Harel Builders, Inc., are terminated'. A copy of said affidavit is attached to the amended complaint. Said defendant caused said affidavit and notice to be recorded in Liber 17144, pages 582–584 of Wayne County records on September 18, 1969."

The affidavit of Albert Simkins, president of defendant, filed in opposition to the motion for summary judgment, answered the claims of plaintiff as to performance of paragraph 11 as follows:

"4. Thereafter, Parklane Homes, Inc., completed its requirements under the terms of said agreement within the time limits prescribed therein. More specifically, each of the requirements, as stated in paragraph 11 of the subject agreement, had been completed by the required completion date. On August 21, 1969, and August 27, 1969, Harel Builders, Inc., was notified by separate letters, copies of which are attached hereto and made a part hereof, that seller had completed its requirements under the subject agreement, and was ready to establish a closing date. Harel Builders, Inc., did not respond to the aforementioned letters.

"5. Parklane Homes, Inc., planned on paying off the mortgage held by Manufacturers National Bank at the closing of the subject land contract, as required by the January 20, 1969, agreement."

Plaintiff asserts that the defendant's affidavit was an insufficient answer to plaintiff's affidavit and refers this Court to the author's comments contained in 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 363, under GCR 1963, 117.2 (3):

"The plaintiff's affidavits must contain verification of all the material facts needed to establish a prima facie case. In turn, defendant's affidavits cannot merely make a general denial of plaintiff's right to recover nor state factual conclusions, but must state facts with particularity which, if proved at the trial, would create a material issue of fact. This does not mean that the affidavits of either party must be a detailed inventory of every item of evidence he has to support his position, but it does require enough, with sufficient particularity, to show that there is real evidentiary support for the position taken in his pleading."

We rule that plaintiff is correct in its position that defendant's answering affidavit merely stated factual conclusions and failed to show real evidentiary support of its position as stated in its pleadings.

## II

Plaintiff's letter of September 2, 1969, stated specifically that the cancellation was based on paragraph 12 of the agreement and defendant's failure to perform under paragraph 11. It also requested the return of the $20,000 deposit as provided in paragraph 12. Defendant now states it accepted the cancellation under paragraph 5; however, the affidavit accepting the cancellation stated:

*"By reason of such notice of cancellation all rights or interests in the land heretofore described which may have been held by Harel Builders, Inc., are terminated."* (Emphasis supplied.)

There was no qualification or reservation in defendant's acceptance of the cancellation and it was based solely on plaintiff's notice of cancellation. The facts in this case are somewhat analogous to the case of *Wonder Products, Inc., v. Blake* (1951),

330 Mich 159. In *Wonder Products,* a buyer offered to rescind a contract of sale because he thought the equipment supplied by the seller was not in compliance with the agreement of sale. Both the trial court and the Supreme Court found that the seller was not in breach of the sale, but rather that the buyer breached the agreement when he refused to make payments on the contract. The Supreme Court held that despite that fact, the buyer could properly make an offer of rescission and if that offer was accepted there was no effective breach and the seller was not entitled to liquidated damages. Viewing the facts in the instant case in the manner most favorable to defendant Parklane, we must rule that plaintiff's offer or notice of cancellation under paragraph 12 of the agreement was accepted by defendant Parklane. Our case is, therefore, controlled by the rule in the *Wonder Products* case, *supra.*

The fact that defendant accepted the cancellation offered by plaintiff is verified by what the attorney for the defendant stated at the hearing on the motion for summary judgment, *viz:*

*"The Court:* You are not disputing that you accepted the cancellation of the contract?

*"Mr. Fealk (for defendant):* We're saying the contract was cancelled, and we accepted the cancellation."

The trial court properly granted summary judgment in favor of plaintiff and it is unnecessary to consider plaintiff's cross-appeal.

Affirmed. Costs to plaintiff against defendant Parklane Homes, Inc.

All concurred.